**Slip Op. 09-108**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,      : | |
|      : | |
| *Plaintiff,*      : | |
|      : | |
| v.      : | Court No. 08–00177 |
|      : | |
| RONALD RODRIGUE and LEROY RODRIGUE,      : | |
|      : | |
| *Defendants.*      : | |

[Denying Plaintiff's motions seeking enlargement of 120-day period for service of process as well as leave to serve by publication, and dismissing action]

Dated:  October 1, 2009

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Joseph A. Pixley); Philip Carpio, Office of the Associate Chief Counsel, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Plaintiff.

## OPINION

RIDGWAY, Judge:

In this action, the Government seeks to collect civil penalties, plus interest and costs, imposed on the Defendants for allegedly transacting customs business without a valid broker's license.

Pending before the Court is Plaintiff's Motion for an Extension of Time, which the Government filed *nunc pro tunc*.  *See* Plaintiff's Motion for Leave to File *Nunc Pro Tunc* Plaintiff's Motion for an Extension of Time; Plaintiff's Motion for an Extension of Time ("Pl.'s Motion for

Extension of Time").[1]  In its Motion for an Extension of Time, the Government seeks a 90-day enlargement of the 120-day period for service of process established in USCIT Rule 4(l), to extend from September 18, 2008 to December 17, 2008 the Government's deadline for effecting service on the two Defendants.

Also pending is Plaintiff's Motion for Leave to Serve by Publication and Motion for an Extension of Time, in which the Government requests a second 90-day extension of the deadline for service of process (*i.e.*, an extension through March 17, 2009), and, moreover, seeks leave to make constructive service via publication in a Florida newspaper.  *See* Plaintiff's Motion for Leave to Serve by Publication and Motion for an Extension of Time ("Pl.'s Motion for Service by Publication").

Subject matter jurisdiction lies under 28 U.S.C. § 1582 (2000).  For the reasons detailed below, the Government's motions must be denied, and this action dismissed.

## I.  Background

According to the Complaint, father and son Defendants Ronald and Leroy Rodrigue operated a freight forwarding company in Miami, Florida, and transacted customs business without a valid broker's license.  *See* Complaint ¶¶ 3-4.  Multiple pre-penalty and penalty notices were issued to the

---

[1]According to Plaintiff's Motion for Leave to File *Nunc Pro Tunc*, on the day before the 120-day period for service of process expired, the Government sought a 90-day extension of time.  *See* Plaintiff's Motion for Leave to File *Nunc Pro Tunc* Plaintiff's Motion for an Extension of Time. However, the Government's motion never reached the court; and some 54 days elapsed before the Government resubmitted its motion *nunc pro tunc*.  *Id*.  The Motion for Leave to File *Nunc Pro Tunc* Plaintiff's Motion for an Extension of Time was granted.  *See* Order (June 26, 2009).  Plaintiff's Motion for an Extension of Time thus is now properly before the Court.

two Defendants, advising them that the U.S. Bureau of Customs and Border Protection was assessing civil penalties of $10,000 each "for transacting customs business, other than solely on behalf of themselves, without a valid brokers license." *See* Complaint ¶ 12. The Complaint further alleges that, although Customs has repeatedly billed both Defendants, the penalties remain unpaid. *See* Complaint ¶¶ 14, 16-17.

Seeking to collect the civil penalties, plus interest and costs, the Government filed this action on May 21, 2008 – the very day on which the five-year statute of limitations would have expired. *See* Complaint; Audio Recording of Hearing at 00:40:25-00:40:53 (noting that statute of limitations would have expired May 21, 2008); 19 U.S.C. § 1641(d)(4) (2000) (statute of limitations).[2] The Government was on notice that, pursuant to USCIT Rule 4(l), it had 120 days from the filing of the Complaint – that is, until September 18, 2008 – to effect service on Ronald and Leroy Rodrigue. *See* USCIT R. 4(l).[3] The Government was also on notice that the stakes were high, and that it had zero margin for error or delay. *See* Audio Recording of Hearing at 03:27:25-03:27:38. Because the Government had run down the clock on the statute of limitations, the Government would be time-barred from refiling if failure to effect service within the 120-day period resulted in the dismissal of this action.

---

[2]Neither Defendant has appeared in this action.

[3]In the course of the hearing on the pending motions, the Government stated that the 120-day period for service of process ended on September 28, 2008. *See* Audio Recording of Hearing at 00:41:12-00:44:06. However, that statement was inaccurate. As the Government correctly noted in its Motion for an Extension of Time, the deadline was actually September 18, 2008. *See* Pl.'s Motion for Extension of Time at 1 (stating that "[t]he deadline for service . . . is September 18, 2008").

The same day that it commenced this action, May 21, 2008, the Government mailed copies

of the summons, Complaint, and waiver of service form to the two Defendants. The documents

addressed to Leroy Rodrigue were sent via first class mail to 8618 SW 156th Place, Miami, Florida

33193, while Ronald Rodrigue's copies were mailed to 458 Buffalo Way, North Fort Myers, Florida.

*See* Complaint, at Certificate of Service.[4] According to the certificate of service, the zip code used

for the mailing to Ronald Rodrigue was 33197. The correct zip code, however, is 33917. *See* Audio

Recording of Hearing at 00:44:49-00:45:21, 00:49:34-00:50:47, 01:02:22-01:02:38 (noting that

33917 is correct zip code); Complaint, at Certificate of Service (indicating that mailing was sent to

zip code 33197).[5]

Months before the Complaint was filed, the Florida Department of Highway Safety & Motor

Vehicles had advised Customs that its most recent address-of-record for Leroy Rodrigue was the

address on 156th Place. *See* Carpio Declaration (Pl.'s Motion for Service by Publication, App. A)

¶ 7.[6] At the same time, the same Florida agency also advised that its most recent address-

---

[4]In its Motion for Service by Publication, the Government states that, on May 21, 2008, it mailed the summons, Complaint, and waiver of service form to Ronald Rodrigue at an address on Bamboo Palm Way. *See* Pl.'s Motion for Service by Publication at 4. That statement is incorrect.

[5]Although counsel for the Government acknowledged in the course of the hearing in this matter that the proper zip code is 33917, the sole record evidence – the Certificate of Service for the Complaint – indicates that the mailing to Ronald Rodrigue was erroneously addressed to zip code 33197. *See* Audio Recording of Hearing at 00:44:49-00:45:21, 00:49:34-00:50:47, 01:02:22-01:02:38 (noting that 33917 is correct zip code); Complaint, at Certificate of Service (indicating that mailing was addressed to zip code 33197).

[6]The Carpio Declaration states that the Florida Department of Highway Safety & Motor Vehicles advised Customs that the address on 156th Place was the Florida agency's most recent address-of-record for Leroy Rodrigue. But the Declaration does not state when the Florida agency provided Customs with that information. *See* Carpio Declaration ¶¶ 6-7. (Indeed, the Carpio Declaration suffers from a distressing lack of specificity, particularly as to dates. *See generally*

of-record for Ronald Rodrigue was 712 Bamboo Palm Way, Oviedo, Florida 32765, and that the

Buffalo Way address was Ronald Rodrigue's prior address.  *See* Carpio Declaration ¶¶ 8-9.[7]

---

Carpio Declaration ¶¶ 4-9.) At the hearing on the pending motions, however, the Government stated that the report from the Florida Department of Highway Safety & Motor Vehicles is dated January 22, 2008.  *See* Audio Recording of Hearing at 00:19:55-00:20:10, 02:47:20-02:48:05.  The information from the  Florida Department of Highway Safety & Motor Vehicles was forwarded to the Department of Justice as part of Customs' "litigation report" dated February 13, 2008.  *See* Carpio Declaration ¶ 8.

It also appears that Leroy Rodrigue used the address on 156th Place as his return address on correspondence with Customs as late as mid-August 2007, and that certified mail addressed to him was delivered to that address on some unspecified date(s).  *See* Audio Recording of Hearing at 00:18:35-00:19:45, 02:45:22-02:46:29, 02:55:20-02:55:45 (stating that, on August 27, 2007, Customs received letter from Leroy Rodrigue dated August 14, 2007, bearing return address of 156th Place); *see also* Carpio Declaration ¶ 4 (stating that Leroy Rodrigue used 156th Place address on correspondence with Customs, and also received certified mail at that address; however, Declaration does not indicate timeframe); Complaint ¶ 14 (stating that Customs billed Leroy Rodrigue in June 2007, July 2007, and August 2007, but silent as to mailing address and mode of transmission used by Customs, as well as any response from Leroy Rodrigue).

The ages of the addresses are critical.  Addresses obviously become less reliable with the passage of time.

[7]In the course of the hearing on the pending motions, the Government stated that the Florida Department of Highway Safety & Motor Vehicles reported the Buffalo Way address as the most recent address-of-record for Ronald Rodrigue.  *See* Audio Recording of Hearing at 02:49:40-02:49:41.  However, the Government did not have a copy of the Florida Department of Highway Safety & Motor Vehicles report on Ronald Rodrigue at the hearing; and the Government's statement was apparently in error.  *See* Audio Recording of Hearing at 02:50:13-02:51:24.  The sole record evidence on point – the Carpio Declaration – states that the Florida Department of Highway Safety & Motor Vehicles advised Customs that the address on Bamboo Palm Way was the Florida agency's most recent address-of-record for Ronald Rodrigue, although the Declaration does not state when the Florida agency provided that information to Customs.  *See* Carpio Declaration ¶¶ 6, 8.  It seems likely that the  Florida Department of Highway Safety & Motor Vehicles information on Ronald Rodrigue was obtained at the same time as the information on Leroy Rodrigue, on January 22, 2008.  *See* Audio Recording of Hearing at 2:48:14-2:50:53.  In any event, the Carpio Declaration indicates that the information from the Florida Department of Highway Safety & Motor Vehicles was forwarded to the Department of Justice as part of Customs' February 13, 2008 litigation report.  *See* Carpio Declaration ¶ 8.  Thus, Customs obviously received the information from the Florida agency

Customs provided all that information to the Department of Justice as part of its "litigation report"

dated February 13, 2008; and Customs apparently had the information in its possession for some

weeks before that. *See* Carpio Declaration ¶¶ 6-9; Audio Recording of Hearing at 00:19:55-

00:20:10, 02:47:20-02:48:05 (stating that report from Florida Department of Highway Safety &

Motor Vehicles was dated January 22, 2008).[8] Notwithstanding the more up-to-date address on

Bamboo Palm Way that was provided by the Florida authorities, the Government mistakenly

directed its May 21, 2008 mailing to Ronald Rodrigue at his old address on Buffalo Way.

---

at some point before that time.

It further appears that Ronald Rodrigue had used the address on Buffalo Way as his return address on correspondence with Customs in the past, and that certified mail addressed to him was delivered to that address on some unspecified date(s). *See* Carpio Declaration ¶ 5 (stating that Ronald Rodrigue used Buffalo Way address as return address on correspondence with Customs, and also received certified mail at that address; however, Declaration does not indicate timeframe); Complaint ¶ 14 (stating that Customs billed Ronald Rodrigue in June 2007, July 2007, and August 2007, but silent as to mailing address and mode of transmission used by Customs, as well as whether Customs received any response); *see also* Audio Recording of Hearing at 02:51:25-02:51:41.

The bottom line is that the Carpio Declaration states unequivocally that the Florida Department of Highway Safety & Motor Vehicles advised Customs that the Buffalo Way address was a *prior* address for Ronald Rodrigue, superseded by the more recent Bamboo Palm Way address, and that Customs communicated that fact to the Department of Justice in the February 13, 2008 litigation report – well before the filing of the Complaint on May 21, 2008. *See* Carpio Declaration ¶¶ 6, 8-9.

[8]On July 2, 2008, Customs once again provided the Department of Justice with the same information – the most recent addresses-of-record as provided by the Florida Department of Highway Safety & Motor Vehicles for both Ronald and Leroy Rodrigue, as well as the Florida agency's history of all prior addresses-of-record for both men. *See* Carpio Declaration ¶¶ 6-9.

On June 6, 2008, the Government's May 21, 2008 mailing to Ronald Rodrigue was returned to the Government. *See* Audio Recording of Hearing at 00:51:23-00:51:47.[9] The envelope, which was labeled "Return to Sender," indicated that it had first been forwarded to the Bamboo Palm Way address. *See* Audio Recording of Hearing at 00:44:31-00:44:49, 00:45:35-00:45:44, 00:46:16-00:47:39, 01:12:30-01:13:03, 03:24:30-03:24:37. The mailing to Leroy Rodrigue was not returned. *See* Audio Recording of Hearing at 01:43:46-01:43:53 (stating that May 21, 2008 mailing addressed to Ronald Rodrigue was only mailing ever returned to Government).

On July 2, 2008, almost a month after the mailing to Ronald Rodrigue had been returned to the Government (and 42 days after the filing of the Complaint) – with no executed waiver of service in hand from either of the two Defendants – the Government again mailed copies of the summons, Complaint, and waiver of service form to the Rodrigues. *See* Pl.'s Motion for Extension of Time; Audio Recording of Hearing at 00:21:15-00:21:26, 00:52:26-00:52:36, 02:57:21-02:57:47.[10] For

---

[9]In the course of the hearing on the pending motions, the Government indicated that it first learned of the Bamboo Palm Way address on June 6, 2008, when its May 21, 2008 mailing to Ronald Rodrigue was returned (with a label indicating that the mailing had been forwarded to the Bamboo Palm Way address from the Buffalo Way address). *See* Audio Recording of Hearing at 01:08:00-01:08:27, 03:24:08-03:24:19, 3:57:23-3:57:35. As the Carpio Declaration states, however, the information from the Florida Department of Highway Safety & Motor Vehicles – which Customs provided to the Department of Justice in *mid-February 2008* – listed the Bamboo Palm Way address as Ronald Rodrigue's most recent address-of-record, with the Buffalo Way address noted as a prior address. *See* Carpio Declaration ¶¶ 6, 8-9.

[10]As note 6 above explains, addresses obviously become less reliable with the passage of time. *See* n.6, *supra*. Nevertheless, in preparation for its July 2, 2008 mailing, the Government apparently did not seek updated address-of-record information for either Defendant, whether from the Florida Department of Highway Safety & Motor Vehicles or from any other source. Instead, the Government relied on the same information that the Florida Department of Highway Safety & Motor Vehicles had provided at some point prior to mid-February 2008. *See* Carpio Declaration ¶¶ 8-9 (indicating that address information from Florida Department of Highway Safety & Motor Vehicles

Leroy Rodrigue, the Government used the same address on 156th Place in Miami. *See* Audio Recording of Hearing at 00:52:38-00:52:51, 02:57:48-02:57:57, 02:58:23-02:58:33. For Ronald Rodrigue, the Government sent the mailing to the Bamboo Palm Way address – the address that the Florida authorities had previously provided, but which the Government had failed to use for its May 21, 2008 mailing. *See* Carpio Declaration ¶¶ 6, 8; Audio Recording of Hearing at 00:52:38-00:52:57.[11] Neither mailing was returned to the Government. *See* Audio Recording of Hearing at 00:53:28-00:53:33, 01:43:30-01:43:33, 02:58:38-02:58:41.

The Government took no further action in the 57 days that followed. *See* Audio Recording of Hearing at 00:55:41-00:56:00, 02:59:37-02:59:41. Finally, on August 29, 2008 – a mere 21 days before the 120-day period for service of process expired, and with the statute of limitations long gone – the Government engaged a professional process service firm, Capitol Process Services. *See* Pl.'s Motion for Extension of Time; Affidavit of Non-Service; Audio Recording of Hearing at 00:54:48-00:55:40, 02:58:42-02:59:34.

---

was forwarded to Department of Justice for a second time, via email on July 2, 2008).

[11]The Government erroneously indicated in its papers that the July 2, 2008 mailing was triggered because the Government had "learn[ed] that *Leroy* Rodrigue had a new address." *See* Pl.'s Motion for Extension of Time (emphasis added). In the course of the hearing, however, the Government advised that it actually meant to refer to *Ronald* Rodrigue and the Bamboo Palm Way address. *See* Audio Recording of Hearing at 00:21:35-00:21:51, 02:57:58-02:58:14.

As explained above, however, the Bamboo Palm Way in fact was not a "new" address that the Government had just identified. In its February 13, 2008 litigation report, Customs had provided the Bamboo Palm Way address to the Department of Justice as the most recent address-of-record for Ronald Rodrigue provided by the Florida Department of Highway Safety & Motor Vehicles. *See* Carpio Declaration ¶¶ 6, 8. That same litigation report had advised the Justice Department that the Buffalo Way address was a prior address. *See* Carpio Declaration ¶¶ 6, 8-9.

Rather than attempting to serve Ronald Rodrigue at the Bamboo Palm Way address, the Government instead instructed the process server to attempt service at 458 Buffalo Way in North Fort Myers – the address to which the summons, Complaint, and waiver of service form originally had been mailed on May 21, 2008 (before being forwarded to Bamboo Palm Way), and the address which the Florida Department of Highway Safety & Motor Vehicles had clearly indicated was *a prior address* for Ronald Rodrigue. *See* Pl.'s Motion for Extension of Time; Affidavit of Non-Service; Audio Recording of Hearing at 01:28:31-01:29:30; Carpio Declaration ¶¶ 6, 8-9.

The Government instructed the process servers to attempt to serve Leroy Rodrigue not at the address on 156th Place in Miami (to which the two mailings had been sent), but, instead, at 15652 SW 85th Terrace, Miami, Florida 33193 – purportedly a former address of Leroy Rodrigue, which was the subject of an alleged tip to Customs. *See* Pl.'s Motion for Extension of Time; Affidavit of Diligent Search and Inquiry; Audio Recording of Hearing at 00:22:30-00:23:30, 03:00:00-03:01:00, 04:16:04-04:16:22.[12]

According to the Affidavit of Diligent Search and Inquiry executed by the process server who sought to serve Leroy Rodrigue, an individual named Luis Martinez resides at the 85th Terrace address. *See* Affidavit of Diligent Search and Inquiry. Mr. Martinez advised the process server that he "[has] never heard of Leroy Rodrigue," and that "he [Mr. Martinez] rents from the brother of the owner Ronald Hodgkins, who [had] recently passed away." *Id*. The affidavit – dated September

---

[12]There is no indication in the record as to whether the information provided to Customs by the Florida Department of Highway Safety & Motor Vehicles included this 85th Terrace address as a prior address-of-record for Leroy Rodrigue. *See* Carpio Declaration ¶ 9 (stating that the information provided by the Florida agency "included all prior addresses-of-record for both Ronald Rodrigue and Leroy Rodrigue").

15, 2008 – states nothing more of substance. The Government elected not to have the process server attempt service on Leroy Rodrigue at the address on 156th Place in Miami,[13] or at any other address. The Government made no additional inquiries and took no further action to locate or serve Leroy Rodrigue in the three days remaining before the 120-day period for service of process ended on September 18, 2008.

It is no surprise that the process server who sought to serve Ronald Rodrigue at the address on Buffalo Way – the address that the Florida authorities had identified as Ronald Rodrigue's *prior address* – was no more successful. According to the Affidavit of Non-Service that he filed, the process server made seven attempts at that address between September 1 and September 13, 2008, and then "discontinued attempting service of the Summons and Complaint." *See* Affidavit of Non-Service.[14] The Government elected not to send the process server to the Bamboo Palm Way address – the address that the Florida Department of Highway Safety & Motor Vehicles had identified as Ronald Rodrigue's most recent address-of-record, and the address to which the U.S. Postal Service

---

[13]The 156th Place address is not only the address to which the Government twice mailed the summons, Complaint, and waiver of service form, but is also the address at which the Government served the two pending motions. *See* Motion for Extension of Time, at Certificate of Service; Motion for Service by Publication, at Certificate of Service.

[14]Specifically, the Affidavit of Non-Service states (entirely in upper case letters):

Attempted at 9-1-08 at 4:50 PM no one there. Attempted 9-3-08 at 5:48 PM no one there. Attempted 9-5-08 at 11:00 AM no one there. Neighbor states they do not know if anyone lives there. Attempted 9-8-08 at 9:28 AM no one there. Spoke to other neighbor who states they think the renter moved out but his name was not Ronald. Attempted 9-10-08 at 8:41 PM no one there. Attempted 9-11-08 10:00 AM no one there. Attempted Saturday 9-13-08 at 5PM no one there.

Affidavit of Non-Service.

had forwarded the Government's May 21, 2008 mailing.[15] Nor did the Government attempt service at any other address. The Government made no additional inquiries and took no further action to locate or serve Ronald Rodrigue in the five days remaining before the 120-day period for service of process ended on September 18, 2008.

Indeed, the Government made no additional inquiries and took no further action to locate or serve either of the two Defendants until late January 2009, after the Court had scheduled a hearing on the pending motions. *See* Audio Recording of Hearing at 01:14:05-01:49:05, 01:51:23-01:52:04, 02:38:10-02:38:47, 03:07:35-03:07:45, 03:08:00-03:08:13, 03:08:38-03:08:57. In light of the impending hearing on the pending motions, the Government decided to attempt service again. *See* Audio Recording of Hearing at 01:02:42-01:02:53, 01:52:26-01:52:42, 02:11:37-02:12:25, 02:14:28-02:14:49, 02:26:28-02:26:45.[16]

At the April 6, 2009 hearing, the Court learned for the first time that, at 8:30 a.m. on February 25, 2009 – more than nine months after the statute of limitations expired, and more than five months after the end of the 120-day period for effecting service of process – a professional

---

[15]The Bamboo Palm Way address is also the address to which the Government mailed the summons, Complaint, and waiver of service form on July 2, 2008, as well as the address at which the Government served the two pending motions. *See* Motion for Extension of Time, at Certificate of Service; Motion for Service by Publication, at Certificate of Service.

[16]Pressed repeatedly by the Court in the course of the hearing, the Government was unable to give a satisfactory explanation of the bases for its decisions to attempt to serve the Defendants at the addresses that it chose. Nor was the Government able to explain why it did not attempt service at *multiple* addresses, and instead felt compelled to try only one address at a time for each Defendant. *See*, *e.g.*, Audio Recording of Hearing at 01:07:16-01:10:15, 01:11:06-01:15:32, 01:30:18-01:30:44, 01:36:10-01:39:35, 01:41:22-01:41:47, 02:14:49-02:16:44, 02:18:16-02:20:08, 02:20:39-02:20:44, 02:23:40-02:23:48, 03:01:15-03:01:28, 03:28:25-03:28:58.

process server had successfully served Ronald Rodrigue at the Bamboo Palm Way address (the address that the Florida Department of Highway Safety & Motor Vehicles had provided to the Government more than a year earlier, and a different address than the process server had used in September 2008). *See* Audio Recording of Hearing at 00:06:54-00:06:59, 01:01:35-01:02:19, 01:03:38-01:04:27, 01:06:19-01:06:25, 02:29:24-02:29:34, 02:30:00-02:30:59.[17]  The Government offered no explanation for its failure to timely notify the Court that service had been effected. *See* Audio Recording of Hearing at 00:06:54-00:07:02, 02:32:23-02:32:47.  And no proof of service was filed with the court – either before the hearing, or since. *See* USCIT R. 4(k) (requiring that proof of service be filed with court, except where service has been waived).[18]

A professional process server reportedly also made an attempt to serve Leroy Rodrigue, at 11:13 a.m. on February 27, 2009, at the address on 156th Place – again, a different address than the process server had used in September 2008.[19]  However, that attempt was not successful. *See* Audio

_____

[17]At the hearing, the Government was necessarily on notice that, if its requests for extensions of time were denied, this action could be subject to dismissal for failure to effect service on Defendants within the 120-day period for service of process. *See*, *e.g.*, Audio Recording of Hearing at 00:03:41-00:05:42, 03:25:06-03:25:31.  The hearing afforded the Government ample opportunity to show good cause for its failure to effect service, or to otherwise make a case for an enlargement of time – which is the purpose of the rule requiring that a court give a plaintiff prior notice of its intent to dismiss an action *sua sponte* for failure to effect service. *See*, *e.g.*, Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987) (explaining that "[t]he requirement of notice provides the delinquent party with an opportunity to demonstrate good cause . . . .   The rule thus offers the serving party a means to avoid an unexpected and perhaps unjustified dismissal."); Thompson v. Maldonado, 309 F.3d 107, 109-10 (2d Cir. 2002); Brengettcy v. Horton, 423 F.3d 674, 683 (7th Cir. 2005); *see also* Brown v. District of Columbia, 514 F.3d 1279, 1286-87 (D.C. Cir. 2008).

[18]*See also* Audio Recording of Hearing at 00:06:59-00:07:01, 02:32:30-02:32:47, 03:59:12-03:59:33, 04:10:32-04:10:47, 04:11:20-04:11:37;

[19]At the hearing on the pending motions, the Government intimated that the process server may have "staked out" the address on 156th Place. *See* Audio Recording of Hearing at 00:26:45-

Recording of Hearing at 02:42:47-02:44:07, 02:44:53-02:45:08. Since that time, the Government has made no further efforts to locate or serve Leroy Rodrigue. *See* Audio Recording of Hearing at 03:40:56-03:41:28. And the Government failed to ask Ronald Rodrigue about the whereabouts of his son. *See* Audio Recording of Hearing at 03:41:30-03:44:27. To date, Leroy Rodrigue still has not been served.

## II.  Analysis

Proper service of process "is not some mindless technicality," but – rather – "a critical part of a lawsuit." Del Raine v. Carlson, 826 F.2d 698, 704 (7th Cir. 1987); Troxell v. Fedders of North America, Inc., 160 F.3d 381, 382 (7th Cir. 1998). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over [a] defendant." Candido v. District of Columbia, 242 F.R.D. 151, 160 (D.D.C. 2007) (citations omitted). In its Motion for an Extension of Time, the Government seeks a 90-day enlargement of the 120-day period for service of process, to extend from September 18, 2008 to December 17, 2008 the Government's deadline for effecting service on the two Defendants. *See* Plaintiff's Motion for

---

00:26:59. There is, however, no evidence to support that assertion. And it strains credulity even to suggest that a process server who had spent hours "staking out" a location would then state the date and time of the attempted service with such pinpoint precision – February 27, 2009, *at 11:13 a.m. See* Audio Recording of Hearing at 02:42:47-02:44:07, 02:44:53-02:45:08.

Again, as note 6 above explains, addresses obviously become less reliable with the passage of time. *See* n.6, *supra*. Nevertheless, in preparation for its February 2009 attempts to effect personal service on the Defendants, the Government apparently did not seek updated address-of-record information for either Defendant, whether from the Florida Department of Highway Safety & Motor Vehicles or from any other source, relying instead on information provided to it more than a year before.

an Extension of Time ("Pl.'s Motion for Extension of Time").  In its later-filed Motion for Leave to Serve by Publication and Motion for an Extension of Time, the Government requests a further 90-day extension of the deadline for service of process (*i.e.*, an extension through March 17, 2009), and, moreover, seeks leave to effect constructive service via publication in a Florida newspaper.  *See* Plaintiff's Motion for Leave to Serve by Publication and Motion for an Extension of Time ("Pl.'s Motion for Service by Publication").

The Government's motions for extensions of time and for leave to serve by publication are analyzed below, in turn.  As discussed there, the Government has failed to show good cause for its failure to serve the two Defendants within the 120-day period for effecting service of process. Further, although the Government failed to argue that an extension of time would be warranted even in the absence of good cause, a review of the relevant factors counsels against a discretionary extension.  The requested extensions of time must therefore be denied.  Moreover, the denial of the requested extensions of time moots the motion for leave to serve by publication.  However, as set forth below, even if the extensions of time were granted, the Government has failed to comply with the requirements of the relevant Florida statute.  Accordingly, even if the motion for leave to serve by publication were evaluated on its merits, the motion nevertheless would be denied.

### A.  <u>The Government's Motions to Extend the Time for Service of Process</u>

The time limits for service of process in this action are governed by Rule 4(l) of the Rules of the Court, which provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court –
> on motion or on its own after notice to the plaintiff – must dismiss the action without
> prejudice against that defendant or order that service be made within a specified

time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

USCIT R. 4(l); *see also* Fed.R.Civ.P. 4(m).[20]  Thus, "[a] court *must* grant additional time to complete service if plaintiff demonstrates good cause for failing to serve defendant within the 120-day period."  1 Moore's Federal Practice § 4.82[1] (Matthew Bender 3d ed.) (emphasis added).  In addition, the court *may* grant an extension even absent good cause, as a matter of the court's discretion.  *See id*. at § 4.83.

As discussed below, the Government in this case could hardly have done less to effect service of process on the Defendants within the 120-day period established for that purpose.  Under the circumstances, extending the time for service here would set a dangerous precedent, and would grant the Government (and, indeed, all parties) virtual *carte blanche* in future cases.

---

[20]The text of USCIT Rule 4(l) is identical to that of Rule 4(m) of the Federal Rules of Civil Procedure, except for conforming changes required by differences in the numbering of the two sets of rules.

Significantly, as the text of the rule indicates, the required showing is good cause for failure to effect service within the 120-day period, *not* good cause for an extension of time.  Thus, as discussed in greater detail below, the principal focus of the "good cause" inquiry is on the diligence (or lack thereof) on the part of the plaintiff – not on the consequences of the denial of a requested extension.

Accordingly, as a matter of logic, courts generally have held that a "good cause" determination takes no account of factors such as whether an action will be time-barred if an extension is not granted (except perhaps to note that such a fact would be expected to enhance a plaintiff's diligence in attempting to effect timely service).  On the other hand, the expiration of the statute of limitations, as well as any attempts by defendant to evade service, *are* factors to be considered in determining whether to grant an extension *as a matter of discretion.  See, e.g.*, Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments (stating that, even absent showing of good cause, "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service").

1.  Extension of Time for "Good Cause"

In the case at bar, the Government asserts broadly that there is "good cause" for its failure

to serve Defendants within the 120-day period following the filing of the Complaint.  *See* Pl.'s

Motion for Extension of Time at 1; Pl.'s Motion for Service by Publication at 1.  But the facts belie

the Government's claim.[21]

> As one leading treatise explains the concept of "good cause":

> "[G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of process or engaged in misleading conduct, *the plaintiff has acted diligently in trying to effect service* or there are understandable mitigating circumstances, or the plaintiff is proceeding *pro se* or *in forma pauperis*.  *Pro se* status or any of the other listed explanations for a failure to make timely service, however, is not automatically enough to constitute good cause for purposes of [Federal Rule of Civil Procedure] 4(m) [or USCIT Rule 4(l)].

4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (3d ed. 2002)

(emphasis added).  On the other hand, the treatise explains:

---

[21]The plaintiff bears the burden of establishing good cause for its failure to effect service within the 120-day period.  Wright & Miller, Federal Practice and Procedure § 1137; Moore's Federal Practice § 4.82[1].  That burden is a heavy one to bear.  *See*, *e.g.*, Beauvoir v. U.S. Secret Service, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (stating that "[a] party seeking a good cause extension bears a heavy burden of proof") (quotation omitted).

In the instant case, both the Government's Motion for an Extension of Time and its Motion for Service by Publication offer little concerning the specific facts and details of the Government's attempts to locate and effect service of process on the two Defendants (never mind virtually barren of law).  *See* Pl.'s Motion for Extension of Time; Pl.'s Motion for Service by Publication.  In any event, as discussed herein, even if counsel's numerous unsworn and undocumented factual representations made orally in the course of the hearing in this matter are considered, the Government still has not carried its burden.

[F]ederal courts have held that good cause has not been shown in a large number of cases and have rejected excuses based on a failure to receive a waiver of formal service, ignorance of the rule [on service of process], the absence of prejudice to the defendant, office moves or personal problems, the belief that the time requirement was only technical, the filing of an amended complaint, inadvertence of counsel, or the expenditure of efforts that fall short of *real diligence by the serving party*.

Wright & Miller, Federal Practice and Procedure § 1137 (emphasis added).[22]  Although the courts have articulated varying formulations of the standard for "good cause," they are in accord on the requirement of a showing of "real diligence by the serving party."[23]

_____

[22]*See*, *e.g.*, In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996) (stating that "inadvertence or negligence alone do not constitute 'good cause,'" "[m]istake of counsel or ignorance of the rules . . . usually do not suffice" as good cause, "[u]nexplained assertions of miscalculation [of deadlines] do not constitute 'good cause,'" and "absence of prejudice alone does not constitute good cause"); Braxton, 817 F.2d at 241 (holding that attorney's inadvertence does not constitute good cause); Lopez v. United States, 129 F. Supp. 2d 1284, 1295 (D. N.M. 2000), *aff'd*, 21 Fed Appx. 879 (10th Cir. 2001) (explaining that "[t]he 'good cause' standard, as interpreted by the courts, is quite restrictive.  Inadvertence, negligence, ignorance of the service requirements, and reliance on a process server have all been determined not to constitute good cause. . . . Similarly, the fact that a defendant may have had actual notice of the suit, and has suffered no prejudice, does not constitute good cause."); Jonas v. Citibank, N.A., 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006) (stating that "a mistaken belief that service was proper does not constitute good cause," and that "neglect and inadvertence do not suffice to support good cause"); Beauvoir, 234 F.R.D. at 56 ("'[a]n attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause'") (quotation omitted).

[23]*See also*, *e.g.*, Habib v. General Motors Corp., 15 F.3d 72, 74 (6th Cir. 1994) (noting that "[t]o demonstrate good cause, other courts have held that a plaintiff may . . . show that he/she made a reasonable and diligent effort to effect service"); Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1022 (5th Cir. 1995) (stating that, "in short, one is required to be diligent in serving process, as well as pure of heart, before good cause will be found"); Shuster v. Conley, 107 F.R.D. 755, 757 (W.D. Pa. 1985) (stating that "[a] court will not grant an extension [for the service of process] where the plaintiff has not demonstrated a reasonable effort to effect service prior to the running of the 120 day period").

Indeed, a number of courts have gone so far as to hold that good cause exists only where the failure to effect service within the 120-day period is attributable to external causes, beyond the plaintiff's control.  *See*, *e.g.*, Lepone-Dempsey v. Carroll County Commissioners, 476 F.3d 1277,

1281 (11th Cir. 2007) (explaining that "[g]ood cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service'") (quotation omitted); Beauvoir, 234 F.R.D. at 56 (noting that "[g]ood cause is 'generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control'") (quotation omitted).

Although the plaintiff's diligence is the critical factor in evaluating the existence of "good cause" for a failure to effect service within the 120-day period, other factors that some courts have considered include:  whether the defendant had actual notice of the complaint (*see* In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001)); whether the defendant would be prejudiced by the extension of time (*see* In re Sheehan, 253 F.3d at 512; Feingold v. Hankin, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003); Goodstein v. Bombardier Capital, Inc., 167 F.R.D. 662, 666 (D. Vt. 1996)); whether the plaintiff would be severely prejudiced if the complaint were dismissed (*see* In re Sheehan, 253 F.3d at 512); the length of time taken to effect service (*see* Jonas, 414 F. Supp. 2d at 416); and whether the plaintiff sought a timely extension of time (*see id*.).  Each of these factors is analyzed in detail – in the context of the facts of this case – in section II.A.2 below, in considering whether a discretionary extension of time is justified.

Here, for purposes of analyzing the presence or absence of "good cause," it suffices to note that the weight of the authority holds that even a defendant's actual notice of the complaint does not constitute "good cause" for failure to effect service within the 120-day period established for that purpose.  *See*, *e.g.*, West v. Terry Bicycles, Inc., 230 F.3d 1382, 2000 WL 152805 * 2 (Fed. Cir. 2000) (*per curiam*) (unpublished) (observing that "a defendant's knowledge of the pendency of a lawsuit against it does not cure the plaintiff's insufficient service under Rule 4"); LSJ Investment Co. v. O.L.D., Inc., 167 F.3d 320, 322, 324 (6th Cir. 1999) (refusing to substitute actual knowledge of action for proper service under Fed.R.Civ.P. 4); Tuke v. United States, 76 F.3d 155, 157 (7th Cir. 1996) (*citing* Gabriel v. United States, 30 F.3d 75 (7th Cir. 1994), for the proposition that "the plaintiff must serve the United States in the way Rule 4 requires; actual notice is insufficient"); Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1439 (10th Cir. 1994) (stating that actual notice does not constitute good cause); Feingold v. Hankin, 269 F. Supp. 2d at 276 (noting that "actual notice is not considered sufficient to satisfy the standards [for good cause]"); Candido, 242 F.R.D. at 162 (observing, *inter alia*, that "simply being on notice of a lawsuit 'cannot cure an otherwise defective service'").

Similarly, in evaluating good cause for failure to effect service of process within the 120-day period, courts generally decline to consider "the absence of prejudice to the defendant." *See* Wright & Miller, Federal Practice and Procedure § 1137; *see also* Despain, 13 F.3d at 1439 (stating that absence of prejudice to defendant alone does not constitute good cause); MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (same).

In a case such as this, "good cause" requires that a plaintiff exert "such efforts at service as are consistent with a recognition that 120 days may otherwise mark the death of the action." United States v. Gen'l Int'l Mktg. Group, 14 CIT 545, 548, 742 F. Supp. 1173, 1176 (1990) (*quoted with approval in* United States v. World Commodities Equipment Corp., 32 CIT ____, ____, 2008 WL

---

Most courts have also held that, although the fact that a re-filed action would be time-barred may be considered in determining whether to grant an extension of time as a matter of discretion, it is not a factor to be weighed in determining "good cause." *See*, *e.g.*, Petrucelli v. Bohringer and Ratzinger, GmBH, 46 F.3d 1298, 1305-06 (3d Cir. 1995) (holding that "a district court may not consider the fact that the statute of limitations has run until *after* it has conducted an examination of good cause") (emphasis added); Mann v. American Airlines, 324 F.3d 1088, 1090-91 (9th Cir. 2003) (explaining that, if plaintiff has not demonstrated good cause for extension of time, the court may consider the fact that the statute of limitations would bar refiling as a factor in deciding whether to grant extension of time as a matter of court's discretion); Despain, 13 F.3d at 1439 (stating that severe prejudice to plaintiffs due to expiration of statute of limitations does not constitute good cause); Lau v. Klinger, 46 F. Supp. 2d 1377, 1381 (S.D. Ga. 1999) (noting that "courts have . . . held that the court must first determine the issue of good cause before proceeding to the issue of the statute of limitations"); Madison v. BP Oil Co., 928 F. Supp. 1132, 1138 (D. Ala. 1996) (noting that expiration of statute of limitations does not figure into good cause determination); *see also* United States v. Gen'l Int'l Mktg. Group, 14 CIT 545, 549, 742 F. Supp. 1173, 1177 (1990) (in evaluating good cause for failure to make service within 120-day period, declining to consider "the fact that the government cannot renew this action").

Similarly, courts have generally ruled that a plaintiff's ultimate success in serving his complaint does not constitute good cause for failure to effect service within the 120-day period. *See*, *e.g.*, Lovelace v. Acme Markets, Inc., 820 F.2d 81, 83, 85 (3d Cir. 1987) (affirming dismissal based on lack of good cause, even though defendant had been served 55 days after 120-day period expired); United States v. Gen'l Int'l Mktg. Group, 14 CIT at 549, 742 F. Supp. at 1177 (in evaluating good cause for failure to make service within 120-day period, declining to consider fact that "the [government] ultimately succeeded in making personal service after the 120 day deadline").

Finally, although a handful of cases cite the filing of a timely request for an extension of time as a factor in determining good cause, they are few and far between. As noted above, the principal factor in determining "good cause" for the failure to effect service of process within the 120-day period is the diligence of plaintiff's attempts during that period.

748677 * 2 (2008)); *see also* Tuke v. United States, 76 F.3d 155, 156 (7th Cir. 1996) (Easterbrook, J.) (affirming dismissal of action, noting that "[a]n attorney who files suit when the statute of limitations is about to expire must take special care to achieve timely service of process, because a slip-up is fatal"). The plaintiff who seeks to rely on the good cause provision [of the rule governing the timing of service of process] must show *meticulous efforts* to comply with the rule." In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996) (emphasis added). "[H]alf-hearted efforts" at service simply do not suffice. Petrucelli v. Bohringer and Ratzinger, GmBH, 46 F.3d 1298, 1307 (3d Cir. 1995) (*quoting* Lovelace v. Acme Market, Inc., 820 F.2d 81, 84 (3d Cir. 1987)). In short, "[t]he lesson to the federal plaintiff's lawyer is not to take any chances. *Treat the 120 days with the respect reserved for a time bomb*." Petrucelli, 46 F.3d at 1307 (*quoting* Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987), *quoting* Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 88, 109 (1983)) (emphasis added); *see also* Cox v. Sandia Corp., 941 F.2d 1124, 1126 (10th Cir. 1991) (same quotation).

Here, the Government's efforts to effect service within the 120-day period fell well short of "meticulous." Nothing about the Government's actions could be described as reflecting "a recognition that 120 days may otherwise mark the death of the action," or a sense that the 120-day period was a ticking "time bomb."

The Government's approach to service in this case was simply too cavalier. "It is . . . clear that relying on [reaching defendants via mail] cannot ordinarily be considered a reasonable attempt to accomplish service within 120 days and cannot be viewed as a recognition of the existence of a

real deadline." United States v. Gen'l Int'l Mktg. Group, 14 CIT at 549, 742 F. Supp. at 1176.

"When twenty days have passed after mailing without return of the acknowledgment that the mail

was received [or here, for example, when a certain amount of time has passed without the return of

an executed waiver of service form], the diligent plaintiff should recognize that other means of

service will have to be used within the approximately 100 days which remain." *Id*., 14 CIT at 549,

742 F. Supp. at 1176; *see also* Petrucelli, 46 F.3d at 1307 (affirming denial of extension of time,

stating that "[a] prudent attorney exercising reasonable care and diligence would have inquired

further into the matter when it was obvious that the acknowledgment form [included with plaintiff's

attempted service of complaint] was not forthcoming").[24]    In the instant case, when the

_____

[24]One leading treatise foresees and expressly warns against exactly what the Government did in this case:

> Under amended Rule 4, utilization of the waiver procedure of [Fed.R.Civ.P.] 4(d) [USCIT Rule 4(c)] has become as common as traditional personal service. There should not be a great amount of conflict between [Fed.R.Civ.P.] Rule 4(m) [USCIT Rule 4(l)] and the request-for-waiver provision, although *plaintiffs will have to be wary of consuming too much of the 120 days pursuing a waiver of formal service*. Should the plaintiff's attempt to use the waiver procedure prove unsuccessful and cause the plaintiff to miss the [Fed.R.Civ.P.] Rule 4(m) [USCIT Rule 4(l)] deadline, the diligence with which the plaintiff has been pursuing service should determine whether the court will grant a good-cause extension. *As long as plaintiffs keep the 120-day deadline in sight, problems of tardy service can be avoided*.

Wright & Miller, Federal Practice and Procedure § 1137 (emphases added).

The U.S. Court of Appeals for the Seventh Circuit has sounded a similar note of caution about plaintiffs' over-reliance on waiver of service:

> [Rule 4's provisions] for inexpensive notification of a lawsuit accompanied by a waiver of service offer a useful alternative . . . . In the final analysis, however, the rule does not abolish a defendant's right to proper service of process. *Perhaps this case will serve as a warning to lawyers to watch the time that has elapsed after they*

Government's first mailing failed to yield executed waivers of service from the two Defendants, the

Government simply made another mailing, rather than taking more active steps to accomplish

service of process. *See* Pl.'s Motion for Extension of Time; Audio Recording of Hearing at

00:21:15-00:21:26, 00:52:26-00:52:36, 02:57:21-02:57:47.

Moreover, to the extent that the Government sought to use the U.S. mail to contact the

Defendants and seek waivers of service, its attempts were sloppy and haphazard to say the least.

Four months before the Complaint was filed, the Florida Department of Highway Safety & Motor

---

*mail out a waiver form and to act promptly thereafter if the defendant proves uncooperative.*

Troxell, 160 F.3d at 383 (Wood, J.) (emphasis added); *id*. (underscoring that a defendant is entitled to "stand on its right to receive formal service," and that "[n]othing in Rule 4 obliges a defendant to execute a waiver of service"; "a defendant . . . that wants to stand on formalities, for whatever reason, is entitled to do so, as long as it is willing to pay for the privilege [by paying the costs of service]. [Plaintiff's] effort . . . somehow to blame [the defendant] for [the plaintiff's] problems because [the defendant] refused to return the waiver form fundamentally misunderstands the system established by Rule 4.").

*See also*, *e.g.*, West v. Terry Bicycles, 230 F.3d 1382, 2000 WL 152805 * 2 (*per curiam*) (unpublished) (observing that "[u]nless the addressee consents to a request for waiver of formal service, receipt of a complaint by mail does not give rise to any obligation to answer the lawsuit"); Lepone-Dempsey, 476 F.3d at 1281-82 (emphasizing that "the defendant is not required to waive formal service," and that "if the defendant fails to respond to service by mail, the plaintiff must effect personal service"; "While the plaintiffs may have had good reason to think that they could rely on [the defendant's] assertion that he would sign and return the waiver forms, the plaintiffs were responsible for formally serving the defendants when the waiver forms were not returned."); Lau v. Klinger, 46 F. Supp. 2d at 1380-81 (holding that defendant's refusal to return acknowledgment of mail service of process does not constitute bad faith on the part of defendant, and does not constitute good cause; "Mail service is an option for defendants, it is not mandatory, nor is it a 'duty,' and plaintiffs cannot cast their burden of service onto the defendants by unfounded accusations of bad faith. . . . When a defendant chooses not to respond to mail service, the plaintiff must effect service by other lawful means. . . . A [defendant's] mere refusal to elect the mail alternative is not a showing of bad faith.").

Vehicles had provided the Government with Ronald Rodrigue's most recent address-of-record – the Bamboo Palm Way address, where he was eventually served earlier this year. At the same time, the Florida authorities had advised the Government that the Buffalo Way address was Ronald Rodrigue's *prior* address. *See* Carpio Declaration ¶¶ 6, 8-9. Inexplicably, the Government nevertheless sent its first mailing to Ronald Rodrigue at the out-of-date Buffalo Way address. *See* Complaint, at Certificate of Service. And it appears that, even as to that out-of-date Buffalo Way address, the Government got the zip code wrong. *See* Audio Recording of Hearing at 00:44:49-00:45:21, 00:49:34-00:50:47, 01:02:22-01:02:38 (noting that 33917 is correct zip code); Complaint, at Certificate of Service (indicating that mailing was sent to zip code 33197).

Under circumstances such as these, the Government's attempts to contact the Defendants through the use of mail not only do not constitute evidence of diligence in attempting to effect service within the 120-day period – quite to the contrary, such careless mistakes affirmatively refute any suggestion that the Government's efforts to effect timely service were "meticulous," as required to establish the existence of "good cause."

The Government's tardiness in retaining a professional process service firm similarly weighs heavily against a finding of "good cause." *See*, *e.g.*, United States v. Gen'l Int'l Mktg. Group, 14 CIT at 549, 742 F. Supp. at 1176 (finding no good cause in light of, *inter alia*, "the long period of time which [e]lapsed between the failure of mail service and the day when personal service was first attempted"); Cox v. Sandia Corp., 941 F.2d at 1126 (affirming dismissal for failure to effect timely service, noting that "[h]ad [plaintiff's] counsel promptly sent process to the server, he might well have avoided the instant problem"); McIsaac v. Ford, 193 F. Supp. 2d 382, 384 (D. Mass. 2002)

(finding no good cause where, *inter alia*, plaintiff "[did] nothing until the last minute" to retain a professional process server).[25] Here, the Government failed to engage a professional process service firm until only 21 days of the 120-day period remained.

In addition, rather than dispatching professional process servers to attempt service at multiple addresses, the Government attempted service at only a single address for each of the Defendants. The Government sent a professional process server to attempt service on Leroy Rodrigue at an address on 85th Terrace, where the resident had no knowledge of the Defendant. *See* Affidavit of Diligent Search and Inquiry. For whatever reason, the Government elected not to send a process server to the address on 156th Place in Miami – the address that the Florida Department of Highway Safety & Motor Vehicles had identified as Leroy Rodrigue's most recent address-of-record. *See* Carpio Declaration ¶ 7. Nor did the Government attempt personal service on Leroy Rodrigue at any other address. The Government made no additional inquiries and took no further action to locate or serve Leroy Rodrigue in the three days remaining before the 120-day period for service of process ended on September 18, 2008. *See* United States v. Gen'l Int'l Mktg. Group, 14 CIT at 549, 742 F. Supp. at 1176 (finding no good cause in light of, *inter alia*, "the lack of any further attempt in the eleven days remaining" in the 120-day period, following a brief failed attempt by professional process server).

---

[25]*See also*, *e.g.*, United States v. Britt, 170 F.R.D. 8, 9 (D. Md. 1996) (holding that plaintiff's inaction over period of more than 90 days, during which time defendant failed to respond to request for waiver of service, did not support finding of good cause warranting extension of time to effect service; nor was discretionary extension of time appropriate).

The Government's efforts to deploy a professional process server to serve Ronald Rodrigue were, if anything, even more unimpressive. As with Leroy Rodrigue, rather than instructing the professional process server to try multiple addresses in the Government's possession, the Government instead directed the process server to attempt to serve Ronald Rodrigue at only one address. That address was the address on Buffalo Way, which the Florida Department of Highway Safety & Motor Vehicles had clearly identified as Ronald Rodrigue's *prior address*. *See* Carpio Declaration ¶ 8.

Moreover, as with Leroy Rodrigue, after attempts to serve Ronald Rodrigue at the indicated address failed, the Government simply sat on its hands for the remainder of the 120-day period, as the sand continued to trickle through the hourglass. Incredibly, for whatever reason, the Government elected not to send a process server to the address on Bamboo Palm Way – the address that the Florida Department of Highway Safety & Motor Vehicles had identified as Ronald Rodrigue's most recent address-of-record, and, in fact, the address at which Ronald Rodrigue was eventually served, in late February of this year. *See* Carpio Declaration ¶ 8; Audio Recording of Hearing at 00:06:54-00:06:59, 01:01:35-01:02:19, 01:03:38-01:04:27, 01:06:19-01:06:25, 02:29:24-02:29:34, 02:30:00-02:30:59.[26] Nor did the Government attempt personal service on Ronald Rodrigue at any other address. The Government made no additional inquiries and took no further

---

[26]Had the Government made reasonable attempts to serve Ronald Rodrigue at the Bamboo Palm Way address in September 2008 (prior to the expiration of the 120-day period), there is no reason to believe that proper service could not have been achieved. And, if the Government had asked Ronald Rodrigue about the whereabouts of his son, it might well have been possible for the Government to effect timely service on Leroy Rodrigue as well. *See generally* n.59, *infra* (cataloguing cases concerning contacting relatives to locate absentee defendants).

action to locate or serve Ronald Rodrigue in the five days remaining before the 120-day period for service of process ended on September 18, 2008. *See* United States v. Gen'l Int'l Mktg. Group, 14 CIT at 549, 742 F. Supp. at 1176 (cited above).

It is no excuse to say – as the Government suggested at the hearing on the pending motions – that the Government was ambivalent about and lacked confidence in the addresses that it had for the two Defendants. *See*, *e.g.*, Audio Recording of Hearing at 1:07:59-1:08:15, 3:57:54-3:57:59, 04:24:54-04:24:56. In such a situation, a diligent plaintiff exerting "meticulous efforts" to accomplish proper service within the 120-day period would have dispatched professional process servers to all known potential addresses in its possession, and, further, would have updated its research and undertaken additional research to identify any other potential addresses, to locate the missing defendants.

In contrast, here (as discussed above) the Government contented itself with sending professional process servers to a single address for each of the Defendants – and in neither case was it the address that the Florida Department of Highway Safety & Motor Vehicles had identified as the respective Defendant's most recent address-of-record. *See* Affidavit of Diligent Search and Inquiry; Affidavit of Non-Service; Carpio Declaration ¶¶ 7-8. Moreover, the Government never sought updated contact information from that Florida agency, and instead continued to rely on addresses that the agency had provided some eight months before the September 18, 2008 deadline for service of process. *See* Audio Recording of Hearing at 00:19:55-00:20:10, 02:47:20-02:48:05 (stating that report of Florida Department of Highway Safety & Motor Vehicles is dated January 22,

2008). Finally, the Government failed to undertake any additional research to use other sources to identify other potential addresses for the Defendants.[27] And for at least the last three days of the 120-day period, the Government did absolutely nothing – *nothing whatsoever* – to locate or effect service on the two Defendants.

The record of action – and inaction – outlined above does not portray the Government as a plaintiff intent on diligently seeking to effect proper service of process on the Defendants in order to ensure the viability of its case, ever-mindful that the 120-day period for service of process was a ticking "time bomb" with the potential to "mark the death of the action." *See* Braxton, 817 F.2d at 241 (quotation omitted); United States v. Gen'l Int'l Mktg. Group, 14 CIT at 548, 742 F. Supp. at 1176.[28] The Government simply has not shown "good cause" for its failure to serve the Defendants within the 120-day period following the filing of its Complaint in this matter. Nor can

---

[27]*See*, *e.g.*, United States v. Tobins, 483 F. Supp. 2d 68, 78-79 (D. Mass. 2007) (emphasizing that "in hindsight, other efforts could have been made," but identifying as "reasonable efforts" exerted to locate and serve defendant: (1) contact with defendant's counsel to obtain defendant's address; (2) confirming that address "using a postal tracer"; (3) "speaking directly with [defendant's] wife"; and (4) "various attempts to identify an updated address for [defendant], which included Postal Service tracers, searches of Department of Motor Vehicles records, and searches for wage reports").

*See also* Shuster v. Conley, 107 F.R.D. at 757 (in considering motion to serve by publication, suggesting as "examples of a good faith effort to locate a defendant: 1) inquiries of postal authorities, 2) inquiries of relatives, neighbors, friends, and employers of the defendant, and 3) examinations of local telephone directories, voter registration records, [and] local tax records"); nn.52-115, *infra* (identifying wide range of sources and methods required by courts and/or used by diligent plaintiffs in other cases to locate and serve process on absentee defendants).

[28]*See also* McIsaac v. Ford, 193 F. Supp. 2d at 384 (denying extension of time to effect service, explaining that "[t]he risk of [what was in effect] a dismissal with prejudice is one that [plaintiff] assumed by waiting until two days before the expiration of the statute of limitations to file his Complaint and then doing nothing until the last minute to have it served").

it do so.  The Government therefore is not entitled to an extension of time to effect service of

process.

### 2.  Extension of Time Absent Good Cause, As a Matter of Discretion

Under USCIT Rule 4(l) – like Rule 4(m) of the Federal Rules of Civil Procedure – a court

may, in its discretion, grant an extension of time to effect service even in the absence of good cause.

*See* Henderson v. United States, 517 U.S. 654, 662-63 (1996) (*citing* Fed.R.Civ.P. 4(m), Advisory

Committee Note, 1993 Amendments).  However, the Government failed to seek such an extension

here.  *See* Pl.'s Motion for Extension of Time (arguing only that Government has shown "good

cause" for failure to serve within 120-day period; making no argument that, in the alternative,

extension should be granted as a matter of court's discretion); Pl.'s Motion for Service by

Publication (same).[29]

In any event, even had the Government argued that it should be granted a discretionary

extension in this case, that request would have been denied.  Factors that courts have considered in

---

[29]*Compare*, *e.g.*, United States v. World Commodities, 32 CIT at ____, 2008 WL 748677 *
3 (where Customs argued that "even if no good cause exists, the court should exercise its discretion
to grant an extension of time for service"); Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir.
2007) (where plaintiff "argued to the district court both that he had shown good cause and that the
time-bar justified an extension even in the absence of good cause"); United States v. Tobins, 483
F. Supp. 2d at 77 (where government argued that an extension of time was warranted "because it has
shown good cause for any delay," and, further, that "even if [the] court finds no good cause for a
delay. . . , . . . [the] court should exercise its discretion and grant an extension of time to perfect
service of process").

*See also* Thompson v. Brown, 91 F.3d 20, 21-22 (5th Cir. 1996) (holding that district court
was not obligated to address its discretionary power to grant extension of time for service of process
where plaintiff failed to argue that it should be granted an extension even absent a showing of good
cause).

determining whether to extend the time for service of process even in the absence of a showing of

good cause include whether "the statute of limitations would bar the refiled action";[30] whether "the

defendant is evading service or conceal[ed] a defect in attempted service";[31] whether the defendant

had actual notice of the complaint;[32] whether the defendant would be prejudiced by the extension

of time;[33] whether service of process was eventually achieved, and, if so, when;[34] and whether the

---

[30]*See* Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments (stating that, even absent showing of good cause, "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action"); *see also*, *e.g.*, Zapata, 502 F.3d at 197-98; Lepone-Dempsey, 476 F.3d at 1282; Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132-33 (11th Cir. 2005); Mann v. American Airlines, 324 F.3d at 1090-91; Troxell, 160 F.3d at 383; Petrucelli, 46 F.3d at 1305-08; United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 2, 4; United States v. Tobins, 483 F. Supp. 2d at 79-80; Beauvoir, 234 F.R.D. at 58; Feingold v. Hankin, 269 F. Supp. 2d at 277; McIsaac v. Ford, 193 F. Supp. 2d at 384; Goodstein, 167 F.R.D. at 666.

[31]*See* Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments (stating that, even absent showing of good cause, "[r]elief may be justified, for example, . . . if the defendant is evading service or conceals a defect in attempted service"); *see also*, *e.g.*, Lepone-Dempsey, 476 F.3d at 1282; Horenkamp, 402 F.3d at 1132-33; Petrucelli, 46 F.3d at 1305-06; United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 2, 4; Beauvoir, 234 F.R.D. at 58; Feingold v. Hankin, 269 F. Supp. 2d at 277; Goodstein, 167 F.R.D. at 666.

[32]*See*, *e.g.*, Zapata, 502 F.3d at 198-99; Horenkamp, 402 F.3d at 1133; Troxell, 160 F.3d at 383; United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 4; United States v. Tobins, 483 F. Supp. 2d at 79-80; Beauvoir, 234 F.R.D. at 58-59; Lane v. Lucent Techs., Inc., 388 F. Supp. 2d 590, 597 (M.D. N.C. 2005); Feingold v. Hankin, 269 F. Supp. 2d at 277.

[33]*See*, *e.g.*, Zapata, 502 F.3d at 197-99; Troxell, 160 F.3d at 383; United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 3-4 (noting defendant's claim that plaintiff "would suffer no prejudice from the delay" in service, but observing that, *inter alia*, "there is no clear indication that the defendant had actual notice of the claim" within the 120-day period); United States v. Tobins, 483 F. Supp. 2d at 79-80; Beauvoir, 234 F.R.D. at 58-59; Feingold v. Hankin, 269 F. Supp. 2d at 277; Goodstein, 167 F.R.D. at 666.

[34]*See*, *e.g.*, Zapata, 502 F.3d at 194, 198-99 (service four days late, discussed in context of prejudice to defendant); Horenkamp, 402 F.3d at 1130, 1133 (service 29 days late); Lane v. Lucent Techs., 388 F. Supp. 2d at 597 (service three days late); *see also* Troxell, 160 F.3d at 383; Goodstein, 167 F.R.D. at 666; United States v. World Commodities, 32 CIT at _____, 2008 WL

plaintiff sought a timely extension of time.[35]  As outlined below, none of these factors militates in

favor of an extension of time in this case.

The relevant Advisory Committee Note expressly identifies two factors that may justify the

grant of an extension of time for service of process notwithstanding the absence of good cause:

> Relief may be justified, for example, if *the applicable statute of limitations would
> bar the refiled action*, or if *the defendant is evading service or conceals a defect in
> attempted service*.

Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments (emphases added).

In the instant case, because the statute of limitations expired with the filing of the Complaint,

---

748677 * 1, 3 (although court notes plaintiff's argument that service was less than one month late, that argument is not directly addressed); United States v. Tobins, 483 F. Supp. 2d at 70, 81 (although court notes that service has been effected, court does not directly discuss the factor); Jonas, 414 F. Supp. 2d at 416; McIsaac v. Ford, 193 F. Supp. 2d at 382 (court notes that three defendants were served only two or three days late, but does not directly address the factor).

[35]*See*, *e.g.*, Zapata, 502 F.3d at 199 (motion for extension of time filed *nunc pro tunc*); United States v. Tobins, 483 F. Supp. 2d at 81 (failure to seek extension of time); United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 1, 4 (although court notes that motion for extension of time was filed out-of-time, court does not directly address the factor); McIsaac v. Ford, 193 F. Supp. 2d at 384 (court holds that, absent timely motion for extension of time, court will not entertain request for discretionary extension of time for service of process, even where statute of limitations will bar refiling).

In addition, in considering requests for discretionary extensions of time, some courts have acknowledged the potential significance of certain other factors that are not relevant here – such as whether the plaintiff is acting *pro se*, and whether the method of service at issue is unusual or particularly complicated.  *See*, *e.g.*, United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 4 (noting that plaintiff is not *pro se*, and "the rules of service are no more complex than any other customs case"); Lane v. Lucent Techs., 388 F. Supp. 2d at 597 (noting that plaintiff is *pro se*); *see also* McIsaac v. Ford, 193 F. Supp. 2d at 384 (holding that, except where plaintiff is *pro se* and "can show confusion on his part, either because of his unfamiliarity with the rules, or because of his reliance on the misleading advice of others," court will not entertain request for discretionary extension of time for service of process, even where statute of limitations will bar refiling).

denying the requested extensions of time will severely prejudice the Government, because the statute of limitations will bar the Government from refiling. But the Government has no one but itself to blame for that fact.

The Government has not argued, and there is nothing in the record to suggest, that anything prevented the Government from commencing this action well before the eleventh hour and fifty-ninth minute. And, by filing its Complaint at the last possible moment, the Government – in essence – "assumed the risk" of entirely forfeiting its cause of action if it failed to effect proper service of process within 120 days. *See*, *e.g.*, United States v. Gen'l Int'l Mktg. Group, 14 CIT at 548, 742 F. Supp. at 1176 (noting that, especially where statute of limitations has expired, plaintiff must exert "such efforts at service as are consistent with a recognition that 120 days may otherwise mark the death of the action"); Tuke v. United States, 76 F.3d at 156 (Easterbrook, J.) (warning that "[a]n attorney who files suit when the statute of limitations is about to expire must take special care to achieve timely service of process, because a slip-up is fatal").

Faced with that reality, one reasonably would have expected the Government to demonstrate uber-diligence in attempting timely service of process on the two Defendants. Instead, the Government's actions here were careless, dilatory, and half-hearted. As the Second Circuit Court of Appeals emphasized in its seminal opinion in Zapata:

> It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired; and *it is equally obvious that any plaintiff would suffer by having the complaint dismissed with prejudice on technical grounds – this is no less true where the technical default was the result of pure neglect on the plaintiff's part. But . . . no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect*.

Zapata v. City of New York, 502 F.3d 192, 198 (2d Cir. 2007) (emphasis added).

Moreover, the Government's neglect in this case has extended well beyond the 120-day period. The Government did not effect service of process on Ronald Rodrigue until February 25, 2009 – more than *five months* after the 120-day period had ended. And Leroy Rodrigue *still* has not been served, *one full year* after the end of the 120-day period. It is also telling that, from at least September 15, 2008 (three days before the end of the 120-day period) until sometime in late January 2009, the Government made no additional inquiries and took no further action to locate or serve either of the Defendants. In other words, for a period of more than four months, the Government did absolutely nothing in this matter, other than file the pending motions. In addition, even after the Government made the decision in late January 2009 to engage professional process servers to again attempt personal service on the Defendants, those attempts were inexplicably delayed until late February 2009. Moreover, the Government made no further efforts to locate or serve Leroy Rodrigue after February 27, 2009 – either before the April 6, 2009 hearing in this matter, or since. Indeed, although the Government served Ronald Rodrigue, it never even asked him about the whereabouts of his son.

Under these circumstances, the fact that the statute of limitations would bar the Government from refiling would not weigh in favor of a discretionary extension of time in this action. *See*, *e.g.*, Lepone-Dempsey v. Carroll County Commissioners, 476 F.3d 1277, 1282 (11th Cir. 2007) (emphasizing that "the running of the statute of limitations . . . does not require that the district court extend the time for service of process"); Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1133 (11th Cir. 2005) (stating that "the running of the statute of limitations does not require that a district

court extend the time for service of process"); <u>Coleman v. Milwaukee Bd. of School Directors</u>, 290 F.3d 932, 934 (7th Cir. 2002) (Posner, J.) (noting that "the cases make clear that the fact that the balance of hardships favors the plaintiff does not *require* the . . . judge to excuse the plaintiff's failure to serve the complaint and summons within the 120 days provided by the rule");[36] <u>Petrucelli</u>, 46 F.3d at 1306 ("We emphasize that the running of the statute of limitations does not require the district court to extend [the] time for service of process.").

As a second possible factor justifying a discretionary extension of time (in addition to the first possible factor, the fact that the statute of limitations would bar the refiling of an action), the Advisory Committee Note cites the defendant's evasion of service or concealment of a defect in service. *See* Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments (discretionary extension may be justified "if the defendant is evading service or conceals a defect in attempted service"). In the instant case, the Government said nothing about evasion or concealment in its motion papers. *See* Pl.'s Motion for Extension of Time; Pl.'s Motion for Service by Publication. But, at the hearing on the motions, the Government made several vague allusions to evasion. When pressed, however, the Government was unable to cite facts to substantiate that intimation, and the Government quickly backed down. *See* Audio Recording of Hearing at 2:28:21-2:28:28 (Government notes that it is not representing that Rodrigues are evading service), 4:24:43-4:24:53 (conceding that Government has "no legal basis" for claiming evasion); *see generally id*. at

---

[36]<u>Coleman</u>, for example, affirmed the dismissal of plaintiff's action even though "the defendant [did] not show any actual harm to its ability to defend the suit as a consequence of the delay in service, . . . it is quite likely that the defendant received actual notice of the suit [during the 120-day period] within a short time after the attempted service, and . . . moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run." <u>Coleman</u>, 290 F.3d at 934.

00:26:58-00:27:08, 02:28:02-02:28:28, 03:24:57-03:25:06, 04:24:34-04:25:05.

The mere fact that a plaintiff experiences difficulty in effecting service of process does not mean that the defendant is guilty of evasion. The record here is devoid of any indication that Leroy Rodrigue is affirmatively evading service. Moreover, earlier this year the Government actually served Ronald Rodrigue at the very address that the Florida Department of Highway Safety & Motor Vehicles had provided to Customs as Ronald Rodrigue's most recent address-of-record in early 2008 – an address at which the Government had not previously attempted personal service. And, as noted elsewhere, there is no reason to believe that Ronald Rodrigue could not have been timely served at that same address in September 2008 (or even earlier) if the Government had sent a professional process server to the address (rather than directing the process server to Ronald Rodrigue's *prior* address).

In short, there is simply no evidence whatsoever to suggest that either of the two Defendants has engaged in any improper action to evade service of process. *See*, *e.g.*, Bedgood v. Garcia, 2009 WL 1664131 * 4 (M.D. Ala. 2009) (emphasizing that "the fact that serving a defendant has proven to be a difficult and onerous task does not equate with a finding that a defendant is avoiding service"); *id*. at * 3 (observing that "[i]t could well be that plaintiffs are looking in the wrong places for [the defendant] or that he has left the area for reasons unrelated to the plaintiffs' suit. Absent some evidence of culpability, the court will not presume that [the defendant] is avoiding service simply because the plaintiffs have not located him.") (quotation omitted); *id*. (noting that return of certified mail as "unclaimed" does not constitute evasion) (quotation omitted); Shuster v. Conley, 107 F.R.D. at 757 (noting that "[t]he fact that the defendant moved without leaving a forwarding

address alone does not evidence an effort to conceal his whereabouts," and does not constitute evasion of service); United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 2, 4 (examining assertions of evasion in context of "good cause" analysis, and holding that "Customs' vague allegations as to a single address change and difficulty in serving other pleadings . . . cannot reasonably be viewed as evasion of service"). This factor thus would not weigh in favor of a discretionary extension of time in this case.

The third factor that some courts have considered in evaluating a request for a discretionary extension of time to effect service of process is whether the defendant had actual notice of the complaint within the 120-day period. In the case at bar, there is no evidence that either of the two Defendants had actual notice of the Complaint within that timeframe. Nor has the Government argued that either Defendant was on actual notice. The mere fact that mailings were not returned to the Government does not establish that those mailings ever reached the Defendants, or – even if they did – that the mailings were opened and read by the Defendants. *Cf*. United States v. Thorson, 806 F.2d 1061, 1065 (Fed. Cir. 1986) (observing that "[m]isdelivery, delayed delivery, or nondelivery of mail unfortunately sometimes happens"). Further, there is no evidence that the one mailing that was returned to the Government had been opened, much less read by either of the Defendants. Accordingly, this factor too would weigh against a discretionary extension of time in this case.

The next factor – prejudice to the defendant – is the "flip side" of the first factor (discussed above), and is generally accorded great weight by the courts. While a defendant may not suffer prejudice if the time for service is extended where the statute of limitations has not yet run, the

situation is very different in a case such as this.  The Complaint here was filed on the day that the statute of limitations expired; and, 120 days later, the Defendants still had not been served with the Complaint.  When the statute of limitations has expired and the defendant has no notice of the pendency of an action, the doctrine of repose counsels against extending the 120-day period for service of process, particularly where (as here) the plaintiff has been (to put it mildly) less than diligent in attempting to effect service within that timeframe.  *Cf*. Petrucelli, 46 F.3d at 1306 n.7 (emphasizing that rule governing extensions of time should not be interpreted so as to "defeat the purpose and bar of statutes of repose").  As Zapata explained:

> *It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action*, *especially if the defendant had no actual notice of the existence of the complaint until the service period had expired*; and it is equally obvious that any plaintiff would suffer by having the complaint dismissed with prejudice on technical grounds – this is no less true where the technical default was the result of pure neglect on the plaintiff's part. But . . . *no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect*.

Zapata, 502 F.3d at 198 (emphases added) (underscoring "the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service").  In light of all the facts and circumstances, this factor weighs heavily against a discretionary extension of time here.

As to the length of time taken to actually effect service of process, this is most definitely not a case where service was effected within a matter of days, or even weeks, after the end of the 120-day period.  *Compare*, *e.g.*, Zapata, 502 F.3d at 194, 198-99 (affirming dismissal for failure to effect timely service, where service was made only four days after 120-day period ended); United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 1, 3 (dismissing action, even though

service was effected less than one month after 120-day period ended); McIsaac v. Ford, 193 F. Supp. 2d at 382 (dismissing action, even though defendants were served mere two or three days after 120-day period ended). The Government did not effect service of process on Ronald Rodrigue until more than five months after the 120-day period had ended. And, a full year after the end of the 120-day period, Leroy Rodrigue still has not been served. In light of these facts, and other compelling evidence of the Government's procrastination and lack of diligence, this factor also would weigh heavily against a discretionary extension of time.

Finally, although the Government asserts that it timely sought an extension of the 120-day period for service of process, the Government concedes that it did not seek to file that request until the last day before the 120-day period expired, and that it took no action to confirm that its motion had been docketed until late October or early November 2008, when it discovered that no motion had been received by the court. *See* n.1, *supra*; Pl.'s Motion for Extension of Time (dated Sept. 17, 2008; not received until filed *nunc pro tunc*); Audio Recording of Hearing at 00:31:54-00:39:29, 03:30:31-03:32:11, 03:32:54-03:33:04, 03:35:00-03:35:29. And, even after the Government made that discovery, the Government did not take immediate action to cure the problem. *See* Audio Recording of Hearing at 03:32:40-03:32:50, 03:34:18-03:34:40, 03:35:29-03:40:14. Under such circumstances, the Government cannot claim much credit for assertedly being *timely* in seeking an extension of the 120-day period for service of process.

In short, the Government here asserted only that it had shown "good cause" justifying an extension of the 120-day period for service of process, and failed to argue (either in its brief or at the hearing) that – even absent good cause – an extension of time would be warranted, as a matter

of the court's discretion.  It makes little difference.  For all the reasons outlined above, any such request would not have been granted.

### B. The Government's Motion for Service of Process by Publication

In addition to its request for two extensions of the 120-day period to effect service of process, the Government also seeks leave to effect service of process by publication.  *See generally* Pl.'s Motion for Service by Publication.[37]  Because the Government failed to seek leave to serve by publication until the penultimate day of the 120-day period for service of process, the denial of the requested extensions of time effectively moots the Government's motion for service by publication. *See* section II.A, *supra* (denying motions for extensions of time).  As discussed below, however, even if the extensions of time were granted, the Government nevertheless would not be entitled to serve by publication, both because the sworn statement(s) that the Government submitted in support of its request are not legally sufficient under Florida law, and – even more fundamentally – because the Government failed to conduct the requisite "diligent search and inquiry" to attempt to determine the whereabouts of the Defendants, before resorting to service by publication.[38]

1.  The Facial Sufficiency of the Motion for Service of Process by Publication

The Government invokes USCIT Rule 4(d), which permits service upon an individual

---

[37]The Government has never formally withdrawn its Motion for Service by Publication as to Ronald Rodrigue.  As the Government noted in the course of the hearing, however, the motion was effected mooted as to Ronald Rodrigue on February 25, 2008, when he was personally served. *See* Audio Recording of Hearing at 04:00:07-04:00:16.

[38]Although the Government reportedly effected personal service on Ronald Rodrigue in late February of this year, the Government has not formally withdrawn its Motion for Service by Publication as to him.

"pursuant to the law of the state in which service is effected, for the service of a summons in an action brought in the courts of general jurisdiction of the state," by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where service is made." USCIT R. 4(d)(1).[39]  The Government notes that the Florida statutes for constructive service of process provide for service by publication "[t]o enforce any . . . debt owing by any party on whom process can be served within [the] state."  *See* Fla. Stat. §§ 49.011, 49.021 (2008).

The Government further acknowledges that Florida law requires – as a condition precedent to service by publication – that a plaintiff file a verified or sworn statement attesting, *inter alia*, "that the residence of the person [to be served] is[] either: (a) [u]nknown to the affiant; or (b) [i]n some state or country other than [Florida] . . . ; or (c) [i]n the state, but that he or she has been absent from the state for more than 60 days . . . , or conceals himself or herself so that process cannot be personally served."  *See* Pl.'s Motion for Service by Publication at 3; Fla. Stat. § 49.041 (2008). However, none of the papers filed in support of the Government's Motion for Service by Publication – the Carpio Declaration, the Affidavit of Diligent Search and Inquiry (executed by Ross Frew), or the Affidavit of Non-Service (executed by Brian S. Johns) – fulfills the requirement of Florida law quoted immediately above.  *Compare* Fla. Stat. § 49.041(3) *with* Carpio Declaration; Affidavit of Diligent Search and Inquiry; and Affidavit of Non-Service.  The Government's papers are thus legally insufficient on their face.

As the Florida courts have consistently held, "because the lack of personal service implicates due process concerns, a plaintiff must strictly comply with the statutory requirements" for service

---

[39]USCIT Rule 4(d)(1) parallels Rule 4(e)(1) of the Federal Rules of Civil Procedure.

of process by publication. Redfield Investments, A.V.V. v. Village of Pinecrest, 990 So. 2d 1135,

1138-40 (Fla. Dist. Ct. App. 2008) (holding affidavit legally insufficient on its face); *see also*, *e.g.*,

Levenson v. McCarty, 877 So. 2d 818, 820 (Fla. Dist. Ct. App. 2004) (stating that "[c]onstructive

service statutes are strictly construed against a plaintiff who seeks to obtain service of process under

them"); Godsell v. United Guaranty Residential Ins., 923 So. 2d 1209, 1213, 1215 (Fla. Dist. Ct.

App. 2006) (same; also holding affidavit legally insufficient on its face); Gans v. Heathgate-

Sunflower Homeowners Ass'n, Inc., 593 So. 2d 549, 552-53 (Fla. Dist. Ct. App. 1992) (same; also

holding affidavit legally insufficient on its face). The Florida courts have not hesitated to set aside

judgments obtained through service by publication where the supporting affidavit did not strictly

comply with the requirements of the statute.

In Godsell, for example, the court found that an affidavit had "a number of facial defects,"

where the affidavit failed to state "whether the person [to be served] is over or under eighteen, [and]

whether the address is unknown to the affiant," and where the affidavit "omit[ted] any reference to

the important fact of defendant's Canadian residence." *See* Godsell, 923 So. 2d at 1215. The court

therefore concluded that, "although the 'diligent search and inquiry' claim was contained in the

affidavit, [the affidavit] was otherwise not in compliance with the statute." *Id.*

Similarly, in Redfield Investments, the court found the affidavit legally insufficient on its

face because many of the averments stated that an inquiry of a source had not "*yet* revealed an

accurate or current forwarding address for the Defendant." *See* Redfield Investments, 990 So. 2d

at 1139-40. The court held that, "[b]ecause constructive service by publication may not be utilized

where personal service can be had, the use of such qualifying terminology, at a minimum, leaves

open to question whether . . . [the averments in the affidavit] are sufficient to constitute strict compliance with the service by publication statute." *Id*. at 1140 (internal citation omitted).

To the same effect is Gans, 593 So. 2d at 552-53. In Gans, the court underscored that "[i]t is a fundamental principle of law that a plaintiff must strictly comply with a service of process by publication statute," and stated that "[a]n order of publication based on a sworn statement which does not comply with the statute fails to confer jurisdiction." *Id*. at 552. The Gans court concluded that the affidavit in that case was defective, because it did not comply with the part of § 49.041 "which requires that the sworn statement set forth the residence of the defendant as particularly as is known to the affiant." *Id*. at 552-53.

In the case at bar, the papers filed by the Government describe the measures taken to attempt to effect service of process on the Defendants as a "diligent search and inquiry," and state that Ronald and Leroy Rodrigue are both over the age of 18. *See* Carpio Declaration; Affidavit of Diligent Search and Inquiry; Affidavit of Non-Service. The Government's papers therefore satisfy the first two parts of section 49.041 of the Florida statutes. *See* Fla. Stat. § 49.041(1) & (2). However, the Government has failed to satisfy the requirements of section 49.041(3), which mandate that service by publication be supported by a sworn statement indicating "that the residence of [the person to be served] is, either:"

(a)     Unknown to the affiant; or

(b)     In some state or country other than [Florida], stating said residence if known; or

(c)     In the state [of Florida], but that he or she has been absent from the state for more than 60 days next preceding the making of the sworn statement, or conceals himself or herself so that process cannot be personally served, and that affiant believes that there is no person in the state upon whom service of process would bind said absent or concealed defendant.

Fla. Stat. § 49.041(3). The absence of such a statement would be fatal to the Government's Motion

for Service by Publication, if that motion were not already moot. *See* <u>Godsell</u>, 923 So. 2d at 1215

(holding service by publication void where, *inter alia*, affidavit failed to state "whether the address

[of the person to be served] is unknown to the affiant"); *see also*, *e.g.*, <u>Redfield Investments</u>, 990 So.

2d at 1139-40; <u>Gans</u>, 593 So. 2d at 552-53; *cf.* <u>Demars v. Village of Sandalwood Lakes</u>

<u>Homeowners Ass'n, Inc.</u>, 625 So. 2d 1219, 1220-23 (Fla. Dist. Ct. App. 1993) (where "bare bones"

affidavit stated, *inter alia*, that "a diligent search and inquiry" had been made and that "Defendant's

place of residence is unknown," holding that sworn statement in support of service by publication

need only "parrot" or "track" the language of the statute; unnecessary for affiant to include specific

facts demonstrating that a diligent search was undertaken).[40]

### 2. The Substantive Merits of the Motion for Service of Process by Publication

Even assuming that the Government's Motion for Service by Publication were not moot, and

further assuming that the Government's papers in support of that motion were not legally

insufficient on their face (as set forth in section II.B.1 above), the Government's Motion for Service

by Publication nevertheless would have to be denied, because the Government failed to undertake

the requisite "diligent search and inquiry" to attempt to locate and personally serve the Defendants,

before resorting to service of process by publication.[41]

---

[40]Although the <u>Demars</u> court held that a plaintiff is not required to include in its affidavit the specific facts of its "diligent search and inquiry," the court also noted that "the better practice is to file an affidavit . . . which contains all the details of the search," to "simplif[y] review of constructive service for the court." *See* <u>Demars</u>, 625 So. 2d at 1223-24 & n3.

[41]The Supreme Court has emphasized that "[n]otice by publication is a poor and sometimes a hopeless substitute for actual service of notice," conceding that "[i]ts justification is difficult at

"[P]ersonal service of process on a defendant is the usual and preferred method of serving

a defendant with notice of an action." Redfield Investments, 990 So. 2d at 1138.  Thus, service by

publication is permitted only in exceptional cases, "when the plaintiff *cannot* effect personal service.

. . . The determining factor is whether personal service 'cannot be had.'" Gans, 593 So. 2d at 551

(citation omitted); *see also* Godsell, 923 So. 2d at 1213; Dor Cha, Inc. v. Hollingsworth, 876 So. 2d

678, 680 (Fla. Dist. Ct. App. 2004) (stating that "[a] party seeking to utilize service by publication

must be able to show that personal service could not be made"); McDaniel v. McElvy, 108 So. 820,

830-31 (Fla. 1926) (underscoring that "resort to constructive service by publication is predicated

upon necessity, and, if personal service could be effected by the exercise of reasonable diligence,

substituted service is unauthorized").[42]

---

best." City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953) (*quoted in* Schroeder v. City of New York, 371 U.S. 208, 213 (1962)).  One court has poetically observed that "[t]he process of constructive service through publication is a concession of the law to the hard circumstances of necessity." Empire of America, FFA v. Brown, 1986 WL 3034 * 1 (N.D. Ill. 1986) (*quoting* Graham v. O'Connor, 350 Ill. 36, 40 (1932)).  "The law makes this concession grudgingly." *Id*.

   Service by publication is thus strictly a measure of "last resort." *See*, *e.g.*, Wright & Miller, Federal Practice and Procedure § 1115; MATSCO v. Brighton Family Dental, P.C., 597 F. Supp. 2d 158, 163 (D. Me. 2009) (quotation omitted); Duarte v. Freeland, 2008 WL 683427 * 1 (N.D. Cal. 2008) (quotation omitted); Thrivent Financial for Lutherans v. Savercool, 2008 WL 5412095 * 3 (M.D. Pa. 2008).  Indeed, one leading treatise states flatly that "[service by publication] ordinarily is not a proper means of service in actions based on in personam jurisdiction." Wright & Miller, Federal Practice and Procedure § 1074.  It is, to say the very least, "disfavored." *See* Booth v. Martinez, 2007 WL 2086659 * 1 (W.D. Tex. 2007); Prudential Ins. Co. of Am. v. Holladay, 2008 WL 1925293 * 3 (D.N.J. 2008).  Other courts have emphasized that it is "an extraordinary measure," *see* Furin v. Reese Teleservices, Inc., 2008 WL 5068955 * 2 (W.D. Pa. 2008) (quotation omitted), and "the exception, not the rule," *see* Thrivent Financial, 2008 WL 5412095 * 3 (quotation omitted).

   [42]"Where personal service of process cannot be had, then service of process by publication may be had upon the filing of an affidavit on plaintiff's behalf stating the residence of the person to be served as particularly as is known after 'diligent search and inquiry.'" Gmaz v. King, 238 So.

As such, "court-ordered service by publication is appropriate only after the plaintiff has demonstrated . . . that all of the statutory modes of service have been diligently exhausted without successful service and that all reasonable efforts to locate the defendant have failed." Prudential Ins. Co. of Am. v. Holladay, 2008 WL 1925293 * 3 (D.N.J. 2008).[43]  Accordingly, even if the Government's papers here had been determined to be sufficient on their face (which they were not), the court also would be obligated to determine whether the Government in fact actually conducted an adequate search.  *See* Redfield Investments, 990 So. 2d at 1138; Shepheard v. Deutsche Bank

2d 511, 514 (Fla. Dist. Ct. App. 1970) (quotation omitted).

In the instant case, the Government's sworn submissions are conspicuously short on the specific facts and details of the Government's attempts to locate and effect service of process on the two Defendants.  *See* Carpio Declaration; Affidavit of Diligent Search and Inquiry; Affidavit of Non-Service. Even if counsel's numerous unsworn and undocumented factual representations made orally in the course of the hearing in this matter were considered, however, the Government still would not meet its burden.

[43]Florida law on service of process by publication generally parallels that of other states which authorize such service only in those cases where a plaintiff can demonstrate that, despite its diligent efforts, it cannot locate and/or serve a defendant.  The law of such other jurisdictions is thus instructive here.  *See generally* Wright & Miller, Federal Practice and Procedure § 1074 n.21; *see also*, *e.g.*, MATSCO, 597 F. Supp. 2d at 160 (quoting Maine law, which authorizes service by publication only where plaintiff demonstrates inability to serve defendant notwithstanding "due diligence"); Zaritsky v. Crawford, 2008 WL 2705488 * 1 (D. Nev. 2008) (quoting Nevada rule permitting service by publication where  defendant "[c]annot, after due diligence, be found"); Prudential Ins. Co., 2008 WL 1925293 * 2 & n.1 (noting that Alabama law and New Jersey law on service by publication are "practically identical," and require plaintiff to demonstrate inability to personally serve defendant despite "due diligence"); Duarte, 2008 WL 683427 * 1 (quoting California statute providing for service by publication where plaintiff establishes that defendant "cannot with reasonable diligence be served" personally ); Booth v. Martinez, 2007 WL 2086659 * 1 (stating that, under Texas law, service by publication is permitted only after plaintiff has exercised "due diligence," but has "been unable to locate the whereabouts of [the] defendant"); Empire of America, 1986 WL 3034 * 1 (quoting Illinois statute authorizing service by publication only where, *inter alia*, "the defendant's place of residence cannot by diligent inquiry be ascertained").

Trust Co. Americas, 922 So. 2d 340, 343 (Fla. Dist. Ct. App. 2006); Southeast and Associates, Inc.

v. Fox Run Homeowners Ass'n, 704 So. 2d 694, 696 (Fla. Dist. Ct. App. 1997); Demars, 625 So.

2d at 1224.[44]

    As the plaintiff and the party invoking the court's jurisdiction, the Government bears the

burden of establishing the legal sufficiency of its search before recourse to service of process by

publication may be had.  *See* Shepheard, 922 So. 2d at 343; Demars, 625 So. 2d at 1224.[45]

Specifically, before it may resort to service by publication, the Government must demonstrate that

it "reasonably employed the knowledge at [its] command, made diligent inquiry and exerted an

honest and conscientious effort appropriate to the circumstances to acquire the information

necessary to effect personal service on the defendant," but – in the end – was unable to do so.  Wolfe

v. Stevens, 965 So. 2d 1257, 1259 (Fla. Dist. Ct. App.  2007) (*quoting* McDaniel v. McElvy, 108

So. at 831).[46]

---

[44]*See also* Mayo v. Mayo, 344 So. 2d 933, 934 n.1 (Fla. Dist. Ct. App. 1977) (criticizing trial court for making "no serious attempt" to ascertain whether the plaintiff in that case had "[made] diligent search and inquiry required to validly obtain constructive service").

[45]"[B]ecause the lack of personal service implicates due process concerns, a plaintiff must strictly comply with the statutory requirements" governing service of process by publication. Redfield Investments, 990 So. 2d at 1138; *accord*, Godsell, 923 So. 2d at 1213; Shepheard, 922 So. 2d at 343; Gans, 593 So. 2d at 552.  The burden is on the plaintiff "to show strict compliance." Robinson v. Cornelius, 377 So. 2d 776, 778 (Fla. Dist. Ct. App. 1979).

    Moreover, "[c]onstructive service statutes are strictly construed against a plaintiff who seeks to obtain service of process under them."  Levenson v. McCarty, 877 So. 2d at 820; *accord*, Shepheard, 922 So. 2d at 343; Mayo, 344 So. 2d at 935.  And it is the plaintiff who must "present[] facts which clearly justify [the] applicability" of such a statute.  Robinson v. Cornelius, 377 So. 2d at 778.

[46]*See also* Godsell, 923 So. 2d at 1215; Shepheard, 922 So. 2d at 343-44 (*quoting* Demars, 625 So. 2d at 1224); Southeast and Associates, Inc., 704 So. 2d at 696; Grammer v. Grammer, 80

In other words, the Government must demonstrate that, under the circumstances of the case, personal service of process is essentially impossible. *See*, *e.g.*, Godsell, 923 So.2d at 1213 (emphasizing that "[s]ervice by publication may be used only when alternative service [*i.e.*, service by any other means] cannot be effected"); Levenson v. McCarty, 877 So.2d at 820 (explaining that Florida law "is consistent with the common law in permitting service by publication only where personal service cannot be made"); Dor Cha, 876 So.2d at 680 (stating that "[a] party seeking to utilize service by publication must be able to show that personal service could not be made").[47]

As one court recently put it: "In determining whether a plaintiff has exercised 'reasonable diligence' [so as to justify resort to service by publication,] . . . a court must . . . see whether the plaintiff 'took those steps a reasonable person who truly desired to give notice would have taken under the circumstances.'" Duarte v. Freeland, 2008 WL 683427 * 1 (N.D. Cal. 2008) (quotation omitted); *see also* Redfield Investments, 990 So.2d at 1139 ("'Reasonable diligence [in a search to locate defendant for personal service, as a prerequisite for making service by publication] . . . is an honest effort, and one appropriate to the circumstances, to ascertain whether actual notice [*i.e.*, personal service] may be given, and, if so, to give it.'") (*quoting* Levenson v. McCarty, 877 So. 2d

_____

So. 2d 457, 460-61 (Fla. 1955).

[47]The Supreme Court has emphasized that, in giving notice, the means that a party employs "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *See* Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (*quoted in* Jones v. Flowers, 547 U.S. 220, 229 (2006)). To paraphrase Mullane, so too the search and inquiry required of a plaintiff in circumstances such as these "must be such as one desirous of actually [locating] the absentee might reasonably adopt to accomplish it."

at 820); <u>McDaniel v. McElvy</u>, 108 So. at 832.[48]  The Government's efforts here fail this stringent

test.[49]

Little more than a recitation of the bare facts is needed to establish the Government's lack

of diligence in seeking to effect service of process in this case.  As detailed in section I above, in late

January 2008, the Government obtained information on the most recent addresses-of-record for the

two Defendants from the Florida Department of Highway Safety & Motor Vehicles – an address on

156th Place for Leroy Rodrigue, and an address on Bamboo Palm Way for Ronald Rodrigue.  At the

same time, the Government also received information on all prior addresses-of-record for both men.

On May 21, 2008, the Government filed its Complaint, and sent copies of the Complaint and

the waiver of service form to Leroy Rodrigue at the address on 156th Place, his most recent address-

---

[48]As the court observed in <u>Mayo</u>: "A legion of Florida cases are instructive on the proposition that one who relies on service by publication should demonstrate that he has made diligent inquiry, and executed an honest and conscientious effort appropriate to the circumstances to acquire the information necessary to enable him to effect personal service on the defendant."  <u>Mayo</u>, 344 So.2d at 934 n.1).

[49]In the course of the hearing, the Government noted that the Government recently was granted an extension of time and leave to serve by publication in <u>United States v. Prety Fashion & Apparel, Inc.</u>  <u>See</u> <u>United States v. Prety Fashion & Apparel, Inc.</u>, No. 08-00167 (Ct. Int'l Trade filed May 9, 2008).  The facts of that case are readily distinguishable from the facts of the case at bar, however.  In that case, by the time the Government sought an extension of time and leave to serve the corporate defendant by publication, the Government had already effected timely personal service upon the individual defendant, who is the former president and chief executive of the corporate defendant.  <u>See</u> Plaintiff's Motion for Leave to Serve Defendant by Constructive Service and Motion for an Extension of Time Out of Time,  <u>United States v. Prety Fashion & Apparel, Inc.</u>, No. 08-00167 (Ct. Int'l Trade filed Nov. 26, 2008)  at 2.  Thus, the corporate defendant was on timely, actual notice of the action, and the court thus concluded that an extension of time to effect proper service on the corporation was warranted.  It is also significant that the constructive service at issue in that case was service upon the California Secretary of State.  <u>Id</u>. at 2-3.  That case therefore does not stand as an endorsement of service by publication – much less an example of service by publication upon an individual defendant.

of-record. Inexplicably, however, the Government mailed the documents to Ronald Rodrigue at an address on Buffalo Way – one of Ronald Rodrigue's prior addresses. The Government apparently compounded its error by using the wrong zip code for the Buffalo Way address. Neither of the Defendants executed and returned a waiver of service.

The Government took no further action to locate or serve the Defendants for the next 42 days. On July 2, 2008, the Government again mailed copies of the summons, Complaint, and waiver of service form to the two men – to Leroy Rodrigue at the 156th Place address, and to Ronald Rodrigue at the address on Bamboo Palm Way. However, the Government took no further action to locate or serve the two Defendants in the 57 days that followed. Again, neither of the Defendants executed and returned a waiver of service.

On August 29, 2008, with only 21 days remaining until the end of the 120-day period for service of process, the Government finally engaged a professional process service firm. However, rather than attempting service at the most recent addresses-of-record that the Government had obtained from the Florida Department of Highway Safety & Motor Vehicles (or even attempting service at multiple addresses), the Government instead instructed the process servers to attempt service on Ronald Rodrigue at one of his prior addresses (the address on Buffalo Way), and to attempt service on Leroy Rodrigue at an address on 85th Terrace (a putative former address-of-record, as to which the Government purportedly had obtained a "tip"). Those attempts were not successful. Nevertheless, the Government took no further action to locate or serve the Defendants before the 120-day period for service of process ended on September 18, 2008. Indeed, the Government took no further action to locate or serve the Defendants in the four-plus months that

followed.[50]

Eventually, in late January 2009, the Government decided to engage professional process servers to attempt to effect service on the two Defendants at the most recent addresses-of-record as provided by the Florida Department of Highway Safety & Motor Vehicles the year before. For reasons unexplained, service was not actually attempted till late February 2009. An attempt was made to serve Leroy Rodrigue at the address on 156th Place on February 27, 2009. But that attempt was not successful, and the record is silent as to whether any additional attempts were made. Ronald Rodrigue was successfully served at the address on Bamboo Palm Way – an address that the Government had had in its possession for at least one full year. However, the Government did not ask Ronald Rodrigue about the whereabouts of his son, Leroy Rodrigue. And, to date, more than a year after the end of the 120-day period for service of process, Leroy Rodrigue still has not been served.

The Government's lack of diligence was evident from the start, beginning with the Government's unexplained (apparently careless) failure to use the most recent address-of-record for its May 21, 2008 mailing to Ronald Rodrigue, which was exacerbated by the Government's use of an incorrect zip code on that mailing. Such errors are not indicative of the "diligent search and inquiry" required for recourse to service of process by publication. *See*, *e.g.*, Dor Cha, 876 So. 2d at 680 (finding that plaintiff failed to conduct "diligent search and inquiry" where, *inter alia*, "[t]he

---

[50]There is a strong argument that the measure of the Government's diligence should be confined to the 120-day period for service of process which ended on September 18, 2008. As outlined here, however, the Government's dilatory behavior continued even after that date. Accordingly, even if all of the Government's efforts to locate and serve the Defendants were considered, the Government still could not show that it made the requisite "diligent search and inquiry."

plaintiff was not careful in his search, crucially misspelling [defendant's] name in the inquiry that

he made of the driver's license department").

        Even more damning is the Government's delay in engaging professional process servers –

an error compounded by the Government's failure to send the process servers to the Defendants'

most recent addresses-of-record as provided by the Florida Department of Highway Safety & Motor

Vehicles (or, alternatively, to send the process servers to multiple addresses).  As noted above,

Ronald Rodrigue was successfully served at that address-of-record (on Bamboo Palm Way) in late

February 2009, and presumably could have been served at that address well before the 120-day

period for service of process ended on September 18, 2008, if only the Government had exercised

diligence.  Further, to this very day the record is devoid of any indication as to who in fact actually

resides at the address on 156th Place (the most recent address-of-record that the Florida Department

of Highway Safety & Motor Vehicles provided for Leroy Rodrigue).  The fact that, even now, the

Government still has not established whether Leroy Rodrigue – or someone else – lives at that

address is further testament to the Government's lack of diligence in this matter.

        Similarly troublesome is the absence of any evidence to indicate that the Government made

repeated attempts to serve Leroy Rodrigue at the 156th Place address, beginning in late February

2009.  Diligent plaintiffs recognize that it is often necessary to make multiple attempts, at all hours

of the day and night, on different days of the week, over an extended period of time, in order to

effect personal service on a defendant.  *See*, *e.g.*, Southeast and Associates, Inc., 704 So. 2d at 695

(finding that plaintiff made "diligent search and inquiry" where, *inter alia*, professional process

server made repeated attempts to serve defendants "over a thirty-day period, at different times of

day"); *see also* Audio Recording of Hearing at 02:28:42-02:29:01 (Government conceding that, in light of limited period during which personal service was attempted here, process servers would not have found Rodrigues at their homes if they were, for example, on vacation).

The Government's failure to seek updated information on the addresses of the two Defendants is also telling. The report from the Florida Department of Highway Safety & Motor Vehicles providing the most recent and prior addresses-of-record for the Rodrigues was dated January 22, 2008. That information was thus four months old by the time the Government sought to use it for the first time on May 21, 2008. Moreover, there is no indication in the record that the Government ever requested updated information on the two Defendants. Diligent plaintiffs are sensitive to the problem of "stale" information. *See*, *e.g.*, Gans, 593 So.2d at 551-52 (finding that plaintiff failed to conduct "diligent search and inquiry" where, *inter alia*, process server concluded that residence was unoccupied, even though Florida Department of Motor Vehicles printout obtained by plaintiff indicated that defendant had re-registered her car at that same address a mere three weeks earlier; noting that, "[a]lthough [defendant] might have moved during the three week period, it was unlikely"); Duarte, 2008 WL 683427 * 3 (indicating that, in light of the passage of time, "the Court believes that a further and more current search for [defendant] is appropriate before resorting to the last resort of service by publication").

The Government's inaction for protracted periods of time is additional compelling evidence of its inattention and lack of diligence in effecting service of process. Quite apart from the periods of inaction that preceded the end of the 120-day period for service of process on September 18, 2008, the Government's lack of activity between that date and late February 2009, and between late

February 2009 and the April 6, 2009 hearing, reflects an indifference that is fundamentally inconsistent with the Government's obligation to conduct a "diligent search and inquiry" to locate and effect service of process on the Defendants personally.[51]

Yet another grave and glaring flaw in the Government's approach to service of process in this case was its reliance on a single source of information. Particularly if the Government had reservations about the accuracy of the information provided by the Florida Department of Highway Safety & Motor Vehicles (as it indicated in the course of the April 6, 2009 hearing), it was incumbent upon the Government to consult other sources in order to locate and serve the Defendants. *See*, *e.g.*, Audio Recording of Hearing at 1:07:59-1:08:15, 3:57:54-3:57:59, 04:24:54-04:24:56 (Government expressing uncertainty as to validity of addresses).

A casual survey of several dozen cases discloses a very wide range of means that other plaintiffs have employed to locate and/or contact missing defendants in order to effect service of process – including retaining a private investigator;[52] "background checks";[53] "skip traces";[54]

---

[51]This is to say nothing of the Government's apparent inactivity in the nearly six months since the April 6, 2009 hearing.

[52]*See*, *e.g.*, Dolezal v. Fritch, 2008 WL 5215335 * 2 (D. Ariz. 2008); Posey v. Searcy, 2008 WL 5382692 * 2-3 (E.D. Pa. 2008); Thrivent Financial, 2008 WL 5412095 * 2; Booth v. Martinez, 2007 WL 2086659 * 1; Levin v. Richter, 1991 WL 13991 * 1 (E.D. Pa. 1991); *see also* BP Prods. North America, Inc. v. Dagra, 236 F.R.D. 270, 272-73 (E.D. Va. 2006) (foreign defendant); Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1013 (9th Cir. 2002) (foreign defendant).

[53]*See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 1, 3.

[54]*See*, *e.g.*, Godsell, 923 So. 2d at 1210-11, 1215; Southeast and Associates, Inc., 704 So. 2d at 695-96.

reviewing  criminal history records;[55] running credit checks;[56] conferring with the defendant's

current or former legal counsel;[57] contacting co-defendants;[58] consulting the defendant's relatives,

friends, and neighbors;[59] talking to tenants or parties in possession of the property at the defendant's

putative address(es);[60] contacting the defendant's employer and former employers,[61] as well as co-

---

[55]*See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 3.

[56]*See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 3; US Bank, NA v. Matthews, 2005 WL 2709295 * 1 (N.D. Ill. 2005).

[57]*See*, *e.g.*,  Redfield Investments, 990 So. 2d at 1138;  Godsell, 923 So. 2d at 1213; Levenson v. McCarty, 877 So. 2d at 819-20; Dor Cha, 876 So. 2d at 680; Demars, 625 So. 2d at 1221; Sananikone v. United States, 2009 WL 796544 * 1, 3-4 (E.D. Cal. 2009) (*citing* Donel, Inc. v. Badalian, 150 Cal. Rptr. 855 (Cal. Ct. App. 1978); Kott v. Superior Court, 53 Cal. Rptr. 2d 215, 221 (Cal. Ct. App.1996); Vorburg v. Vorburg, 117 P.2d 875 (Cal. 1941)); Dolezal, 2008 WL 5215335 * 2; United States v. Tobins, 483 F. Supp. 2d at 70, 78; Empire of America, 1986 WL 3034 * 1 (*citing* First Fed. Sav. & Loan Ass'n v. Brown, 393 N.E.2d 574 (Ill. App. Ct. 1979)).

[58]*See*, *e.g.*, Robinson v. Cornelius, 377 So.2d at 777; Sananikone, 2009 WL 796544 * 3-4 (*citing* Kott v. Superior Court, 53 Cal. Rptr. 2d at 221); Prudential Ins. Co., 2008 WL 1925293 * 1.

[59]*See*, *e.g.*, Godsell, 923 So. 2d at 1211-13; Floyd v. Federal Nat'l Mortgage Ass'n, 704 So. 2d 1110, 1112 (Fla. Dist. Ct. App. 5th Dist. 1998); Southeast and Associates, Inc., 704 So. 2d at 695-96; Gans, 593 So. 2d at 551; Mayo, 344 So. 2d at 935-36; Sananikone, 2009 WL 796544 * 4; Thrivent Financial, 2008 WL 5412095 * 2-3; Duarte, 2008 WL 683427 * 2, 4 (quoted with approval in MATSCO, 597 F. Supp. 2d at 162-63); Posey v. Searcy, 2008 WL 5382692 * 3; Prudential Ins. Co., 2008 WL 1925293 * 3-4; Dolezal, 2008 WL 5215335 * 2-3; United States v. Tobins, 483 F. Supp. 2d at 71-72, 78; US Bank, NA, 2005 WL 2709295 * 1; Levin v. Richter, 1991 WL 13991 * 1; Penn v. Raynor, 1989 WL 126282 * 2-3 (E.D. Pa. 1989); Empire of America, 1986 WL 3034 * 1 (*citing* Bell Federal Sav. & Loan Ass'n v. Horton, 376 N.E.2d 1029 (Ill. App. Ct. 1978)); Cooper v. Commonwealth Title of Arizona, 489 P.2d 1262, 1266 (Ariz. Ct. App. 1971) (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[60]*See*, *e.g.*, Floyd, 704 So. 2d at 1112; Demars, 625 So. 2d at 1221; Sananikone, 2009 WL 796544 * 1; Prudential Ins. Co., 2008 WL 1925293 * 3.

[61]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 1; Duarte, 2008 WL 683427 * 2 (quoted with approval in MATSCO, 597 F. Supp. 2d at 162-63); Posey v. Searcy, 2008 WL 5382692 * 3; Booth v. Martinez,  2007 WL 2086659 * 1; Levin v. Richter, 1991 WL 13991 * 1; Penn v. Raynor, 1989

workers and former co-workers (including employees);[62] visiting the defendant's business

premises;[63] searching Social Security Administration databases;[64] reviewing Internal Revenue

Service records;[65] reviewing wage reports;[66] reviewing utility company records in general;[67]

searching water and sewer records;[68] searching electric utility records;[69] reviewing telephone

company records;[70] searching telephone directories;[71] contacting directory assistance;[72] reviewing

---

WL 126282 * 2-3; Empire of America, 1986 WL 3034 * 1 (*citing* First Fed. Sav. & Loan, 393 N.E.2d 574).

[62]*See*, *e.g.*, Duarte, 2008 WL 683427 * 2 (quoted with approval in MATSCO, 597 F. Supp. 2d at 162-63).

[63]*See*, *e.g.*, Southeast and Associates, Inc., 704 So. 2d at 695-96 (visit); Posey v. Searcy, 2008 WL 5382692 * 2-3 (mail); Penn v. Raynor, 1989 WL 126282 * 3.

[64]*See*, *e.g.*, Godsell, 923 So. 2d at 1210-11, 1215; Floyd, 704 So. 2d 1112; Southeast and Associates, Inc., 704 So. 2d at 695; Booth v. Martinez, 2007 WL 2086659 * 1; US Bank, NA, 2005 WL 2709295 * 1.

[65]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 1.

[66]*See*, *e.g.*, United States v. Tobins, 483 F. Supp. 2d at 72, 78.

[67]*See*, *e.g.*, MATSCO, 597 F. Supp. 2d at 162; Cooper, 489 P.2d at 1266 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[68]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138.

[69]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138; Demars, 625 So. 2d at 1221.

[70]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138; Penn v. Raynor, 1989 WL 126282 * 1, 3.

[71]*See*, *e.g.*, Hobe Sound Indus. Park, Inc. v. First Union Nat'l Bank of Florida, 594 So. 2d 334 (Fla. Dist. Ct. App. 1992); Robinson v. Cornelius, 377 So.2d at 778; Sananikone, 2009 WL 796544 * 3 (*citing* Donel, 87 Cal. App. 3d 327; Vorburg, 117 P.2d at 876); Prudential Ins. Co., 2008 WL 1925293 * 3; Duarte, 2008 WL 683427 * 2-4 (*citing* Watts v. Crawford, 896 P.2d 807 (Cal. 1995)) (quoted with approval in MATSCO, 597 F. Supp. 2d at 163); Posey v. Searcy, 2008 WL 5382692 * 3; US Bank, NA, 2005 WL 2709295 * 1; Beasley v. United States, 162 F.R.D. 700, 701-

city directories;[73] contacting the U.S. Postal Service;[74] inquiring about a "forwarding address";[75]

requesting a "postal tracer";[76] "check[ing] for an address listing";[77] searching Department of Motor

Vehicles records (including vehicle title registrations, as well as drivers licenses),[78] and driving

---

02 (M.D. Ala. 1995); Levin v. Richter, 1991 WL 13991 * 1; Penn v. Raynor, 1989 WL 126282 * 1-3; Cooper, 489 P.2d at 1266 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[72]See, e.g., Redfield Investments, 990 So. 2d at 1137; Godsell, 923 So. 2d at 1211; Gans, 593 So.2d at 552; Bedgood, 2009 WL 1664131 * 1.

[73]See, e.g., Sananikone, 2009 WL 796544 * 3 (citing Donel, 150 Cal. Rptr. 855; Vorburg, 117 P.2d at 876); Duarte, 2008 WL 683427 * 2-4 (citing Watts v. Crawford, 896 P.2d 807) (quoted with approval in MATSCO, 597 F. Supp. 2d at 163); Beasley, 162 F.R.D. at 701-02; Cooper, 489 P.2d at 1266 (quoted with approval in  MATSCO, 597 F. Supp. 2d at 163).

[74]See, e.g., Redfield Investments, 990 So. 2d at 1137 (FOIA request); Gaeth v. Deacon, 964 A.2d 621, 623 (Me. 2009) (quoted with approval in MATSCO, 597 F. Supp. 2d at 160-62); Posey v. Searcy, 2008 WL 5382692 * 1, 3 (including FOIA request); Prudential Ins. Co., 2008 WL 1925293 * 3 n.4 (citation omitted); US Bank, NA, 2005 WL 2709295 * 1; Penn v. Raynor, 1989 WL 126282 * 2 (FOIA request).

[75]See, e.g., Godsell, 923 So. 2d at 1210-11, 1215; MATSCO, 597 F. Supp. 2d at 162-63; Prudential Ins. Co., 2008 WL 1925293 * 1, 3; Levin v. Richter, 1991 WL 13991 * 1; Cooper, 489 P.2d at 1266 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[76]See, e.g., United States v. Tobins, 483 F. Supp. 2d at 70, 72-74, 78.

[77]See, e.g., Penn v. Raynor, 1989 WL 126282 * 1, 3.

[78]See, e.g., Godsell, 923 So. 2d at 1210-11; Dor Cha, 876 So. 2d at 679-80; Southeast and Associates, Inc., 704 So. 2d at 695; Gans, 593 So. 2d at 550; Robinson v. Cornelius, 377 So. 2d at 777; Bedgood, 2009 WL 1664131 * 1; Thrivent Financial, 2008 WL 5412095 * 2-3; Posey v. Searcy, 2008 WL 5382692 * 3; United States v. Tobins, 483 F. Supp. 2d at 72, 78; US Bank, NA, 2005 WL 2709295 * 1; Levin v. Richter, 1991 WL 13991 * 1; Penn v. Raynor, 1989 WL 126282 * 2-3.

records;[79] reviewing voter registration rolls;[80] searching Vital Statistics records (including records of births, deaths, marriages, and divorces);[81] contacting the office of local district attorney/prosecutor;[82] reviewing local court records (including judgments and bankruptcy records);[83] searching probate records;[84] reviewing the records of business licensing or professional licensing agencies;[85] searching corporate registrations;[86] reviewing the records of educational institutions that the defendant attended;[87] contacting churches;[88] consulting embassies and consulates;[89] reviewing

[79]*See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 3.

[80]*See*, *e.g.*, Duarte, 2008 WL 683427 * 2-3 (*citing* Watts v. Crawford, 896 P.2d 807) (quoted with approval in MATSCO, 597 F. Supp. 2d at 163); Posey v. Searcy, 2008 WL 5382692 * 3; Prudential Ins. Co., 2008 WL 1925293 * 3; US Bank, NA, 2005 WL 2709295 * 1; Penn v. Raynor, 1989 WL 126282 * 2-3; Cooper, 489 P.2d at 1266 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[81]*See*, *e.g.*, Floyd, 704 So. 2d at 1112; Prudential Ins. Co., 2008 WL 1925293 * 3.

[82]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 3 (*citing* Vorburg, 117 P.2d at 876); Prudential Ins. Co., 2008 WL 1925293 * 3 n.4.

[83]*See*, *e.g.*, Hobe Sound Indus. Park, 594 So. 2d 334; Sananikone, 2009 WL 796544 * 1; US Bank, NA, 2005 WL 2709295 * 1.

[84]*See*, *e.g.*, Floyd, 704 So. 2d at 1112.

[85]*See*, *e.g.*, MATSCO, 597 F. Supp. 2d at 162; Booth v. Martinez,  2007 WL 2086659 * 1.

[86]*See*, *e.g.*, Family Tree Farms, LLC v. Alfa Quality Produce, Inc., 2009 WL 565568 * 2 (E.D. Cal. 2009).

[87]*See*, *e.g.*, MATSCO, 597 F. Supp. 2d at 162; Duarte, 2008 WL 683427 * 4 (quoted with approval in  MATSCO, 597 F. Supp. 2d at 163); Gaeth v. Deacon, 964 A.2d at 623-24, 630 (quoted with approval in  MATSCO, 597 F. Supp. 2d at 160-62).

[88]*See*, *e.g.*, Thrivent Financial, 2008 WL 5412095 * 1-2.

[89]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138-39; MATSCO, 597 F. Supp. 2d at 162.

the records of condominium owners' associations;[90] contacting the defendant's insurance agent;[91]

reviewing mortgage records;[92] searching property records;[93] contacting the county recorder's

office;[94] reviewing the records of the county assessor;[95] searching real property tax records;[96]

reviewing tax lien records;[97] contacting the county tax collector's research department;[98] reviewing

tax records in general;[99] searching local tax records;[100] reviewing "taxpayer's lists";[101] database

---

[90]*See*, *e.g.*, Demars, 625 So. 2d at 1221.

[91]*See*, *e.g.*, Godsell, 923 So. 2d at 1212; Thrivent Financial, 2008 WL 5412095 * 2.

[92]*See*, *e.g.*, Godsell, 923 So. 2d at 1212; Shepheard, 922 So. 2d at 344; Demars, 625 So. 2d at 1221.

[93]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1137; Demars, 625 So. 2d at 1221; Thrivent Financial, 2008 WL 5412095 * 3; US Bank, NA, 2005 WL 2709295 * 1; Penn v. Raynor, 1989 WL 126282 * 2 (*citing* Deer Park Lumber, Inc. v. Major, 559 A.2d 941 (Pa. Super. 1989)); Empire of America, 1986 WL 3034 * 1 (*citing* Bell Federal Sav. & Loan, 376 N.E.2d 1029).

[94]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138.

[95]*See*, *e.g.*, Penn v. Raynor, 1989 WL 126282 * 2 (*citing* Deer Park Lumber, 559 A.2d 941); Cooper, 489 P.2d at 1266 (quoted with approval in  MATSCO, 597 F. Supp. 2d at  163).

[96]*See*, *e.g.*, Gans, 593 So. 2d at 550-51.

[97]*See*, *e.g.*, US Bank, NA, 2005 WL 2709295 * 1.

[98]*See*, *e.g.*, Redfield Investments, 990 So. 2d at 1138.

[99]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 3 (*citing* Donel, 150 Cal. Rptr. 855); Prudential Ins. Co., 2008 WL 1925293 * 3; Posey v. Searcy, 2008 WL 5382692 * 3.

[100]*See*, *e.g.*, Levin v. Richter, 1991 WL 13991 * 1; Penn v. Raynor, 1989 WL 126282 * 2-3.

[101]*See*, *e.g.*, Penn v. Raynor, 1989 WL 126282 * 2 (*citing* Deer Park Lumber, 559 A.2d 941).

research in general;[102] inspection of other available public records;[103] using internet searches/search

engines in general;[104] searching westlaw.com public record databases;[105] searching accurint.com (a

Lexis-Nexis-run web service providing records for searches on individuals);[106] searching

Peoplefinders;[107] conducting a search using google.com;[108] conducting a phone number search on

msn.com;[109] searching autotrackxp.com (a professional investigative search engine operated by

ChoicePoint);[110] placing telephone calls;[111] using regular mail;[112] using registered or certified mail;[113]

---

[102]*See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 3.

[103]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 4.

[104]*See*, *e.g.*, Godsell, 923 So.2d at 1211; Dor Cha, 876 So. 2d at 679; Prudential Ins. Co., 2008 WL 1925293 * 3; Duarte, 2008 WL 683427 * 2-4 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163); Thrivent Financial, 2008 WL 5412095 * 1-2.

[105]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 1, 3.

[106]*See*, *e.g.*, Duarte, 2008 WL 683427 * 2-4 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[107]*See*, *e.g.*, Bedgood, 2009 WL 1664131 * 1.

[108]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 1, 3.

[109]*See*, *e.g.*, Gaeth v. Deacon, 964 A.2d at 623 (quoted with approval in MATSCO, 597 F. Supp. 2d at 160-62).

[110]*See*, *e.g.*, Gaeth v. Deacon, 964 A.2d at 623 (quoted with approval in MATSCO, 597 F. Supp. 2d at 160-62).

[111]*See*, *e.g.*, Levenson v. McCarty, 877 So. 2d at 819-20; Gans, 593 So. 2d at 551; Bedgood, 2009 WL 1664131 * 1; Duarte, 2008 WL 683427 * 4 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163).

[112]*See*, *e.g.*, Shepheard, 922 So. 2d at 342; Gans, 593 So. 2d at 550-52; MATSCO, 597 F. Supp. 2d at 162; Duarte, 2008 WL 683427 * 2-4 (quoted with approval in MATSCO, 597 F. Supp. 2d at 163); Dolezal, 2008 WL 5215335 * 2; Posey v. Searcy, 2008 WL 5382692 * 2-4; *see also* Jones v. Flowers, 547 U.S. at 222 (explaining that "[c]ertified mail makes actual notice more likely

sending a package via UPS;[114] and using e-mail to contact the defendant.[115]

At the hearing on the pending motions, the Government rhetorically asked what more it could have been expected to do to locate and serve the Defendants, citing Grammer v. Grammer for the proposition that "[e]xtraordinary steps to ascertain the whereabouts of [a] party are not required." *See* Grammer v. Grammer, 80 So.2d 457, 461 (Fla. 1955); Audio Recording of Hearing at 04:07:50-04:07:58; *see also id.* at 00:26:37-00:26:43, 03:56:41-03:56:54, 03:58:11-03:58:31, 03:59:00-03:59:05, 03:59:45-03:59:57, 04:05:30-04:07:05, 04:12:41-04:12:58, 04:18:58-04:19:05. As the cases cited above amply demonstrate, there was much that was not "extraordinary" that the Government could – and should – have done, in furtherance of the "diligent search and inquiry" that it was obligated to undertake.[116]

---

only if someone is there to sign for the letter or tell the mail carrier that the address is incorrect. Regular mail can be left until the person returns home, and might increase the chances of actual notice.").

[113]*See*, *e.g.*, Southeast and Associates, Inc., 704 So. 2d at 695, 697; Gans, 593 So. 2d at 550-52; Bedgood, 2009 WL 1664131 * 1, 3; Dolezal, 2008 WL 5215335 *2; Furin, 2008 WL 5068955 * 1; Posey v. Searcy, 2008 WL 5382692 * 2-4; Penn v. Raynor, 1989 WL 126282 * 1, 3; *see also* Jones v. Flowers, 547 U.S. at 222 (discussing advantages of using regular U.S. mail vs. certified mail).

[114]*See*, *e.g.*, Furin, 2008 WL 5068955 * 1.

[115]*See*, *e.g.*, Sananikone, 2009 WL 796544 * 1; Modan v. Modan, 742 A.2d 611, 613-14 (N.J. Super. Ct. App. Div. 2000) (cited with approval in Prudential Ins. Co., 2008 WL 1925293 * 2); *see also* Rio Properties, Inc., 284 F.3d at 1017-19 (foreign defendant).

[116]The sole case that the Government cited in its Motion for Service by Publication is readily distinguished. *See* Motion for Service by Publication (*citing* United States v. JRG Medical Equipment, Inc., No. 07-203050 (S.D. Fla. filed Feb. 2, 2007) (docket sheet)). In that case, where (significantly) the defendant was a corporation, the efforts made by the Government before resorting to service by publication were significantly more extensive. In addition to obtaining the current drivers' license address for the corporate representative, the Government made repeated attempts

To be sure, the Government was by no means required to pursue all of the potential sources and courses of action enumerated above. But, clearly, the Government's obligation of "diligent search and inquiry" required it to do something more than it did. *See*, *e.g.*, Prudential Ins. Co., 2008 WL 1925293 * 3 (listing various potential sources of information that plaintiff could have explored, and noting that "[w]hile this is not an exhaustive list of the steps the plaintiff might have taken to determine the defendant's current address, nor would the completion of each necessarily equate to diligence, these avenues of inquiry may reveal his whereabouts or identify individuals who may know his whereabouts"); Cooper v. Commonwealth Title of Arizona, 489 P.2d 1262, 1266 (Ariz. Ct. App. 1971) (identifying range of potential sources of information that plaintiff could have considered, and observing that "[w]hile it may not be necessary to indicate in the affidavit that all of these sources were checked," the actions that plaintiff had already taken "[fell] far short of probative facts which support a finding of due diligence").

Perhaps the single most clear-cut illustration of the Government's failure to conduct a "diligent search and inquiry" is its failure to ask Ronald Rodrigue about the whereabouts of his son, Leroy Rodrigue. As emphasized in Grammer v. Grammer (the Florida Supreme Court case that the Government itself cited in the course of the hearing on the motions at issue here), "the effort [to ascertain the whereabouts of a defendant] should usually extend to inquiry of persons likely or

---

at personal service at that address (until the process servers were told by someone that the corporate representative had never lived at that address), attempted to contact the corporate representative through his wife, confirmed that the address in question was the current mailing address for the corporate representative, attempted to locate the corporate representative at a different business address, and searched a number of databases in an attempt to identify additional addresses where the corporate representative might be located. *See*, *e.g.*, Audio Recording of Hearing at 04:35:21-04:39:17.

presumed to know the facts sought." Grammer v. Grammer, 80 So. 2d at 460-61 (*quoting* McDaniel

v. McElvy, 108 So. at 831-32);[117] *see also* nn.58-59, *supra* (citing cases addressing efforts to locate

and serve defendants through contacts with co-defendants and relatives, respectively). That failure

alone would doom the Government's Motion for Service by Publication. *See*, *e.g.*, Redfield

Investments, 990 So. 2d at 1139 (reversing trial court's denial of motion to quash service of process

by publication, based on "the apparent failure of [the plaintiff] to inquire of the most likely source

of potential information concerning the whereabouts of [the defendant]"); Shepheard, 922 So. 2d

at 344-45 (reversing trial court's denial of plaintiff wife's motion to set aside default judgment based

on service of process by publication, explaining that "[b]ecause [the plaintiff] declined to ask for

[the defendant's] address from the party most likely to possess the information, its conduct led

directly to its alleged unawareness of [the defendant's] address. . . . As such, [the plaintiff] did not

comply with the statutory requirements for constructive service because it did not conduct a diligent

---

[117]The obligation to make "inquiry of persons likely or presumed to know the facts sought" is a recurring theme, well-established in the Florida caselaw on service of process by publication. *See*, *e.g.*, Redfield Investments, 990 So. 2d at 1139 (stating that "effort should usually extend to inquiry of persons likely or presumed to know the facts sought") (emphasis omitted) (*quoting* Levenson v. McCarty, 877 So.2d at 820); Godsell, 923 So. 2d at 1215 (explaining that "'[i]t is basic that to constitute diligent search and inquiry to discover the whereabouts of a party, that inquiry should be made of persons likely or presumed to know such whereabouts'") (quotation omitted); Shepheard, 922 So. 2d at 344 (noting that "[a] diligent search for a defendant's whereabouts requires inquiry of persons likely or presumed to know the defendant's location"); Dor Cha, 876 So. 2d at 680 (identifying as "the general rule for a diligent search": "'It is basic that to constitute diligent search and inquiry to discover the whereabouts of a party, that inquiry should be made of persons likely or presumed to know such whereabouts.'") (quotation omitted); Mayo, 344 So. 2d at 936 (observing that "the test of whether the party who seeks to employ constructive service has made the requisite diligent search and inquiry to whether 'the complaint reasonably employed knowledge at his command in making the appropriate effort' to acquire the information necessary to comply with the statute. It is basic that to constitute diligent search and inquiry to discover the whereabouts of a party, that inquiry should be made of persons likely or presumed to know such whereabouts.") (quotation omitted).

search.") (citation omitted).

In sum, the Government here has failed to demonstrate that it conducted the "diligent search

and inquiry" required as a predicate for service of process by publication.[118]   Thus, even if the

---

[118]Moreover, the Government here has not even attempted to show that its proposal to publish notice in the *Daily Business Review* is reasonably calculated to give the remaining unserved Defendant, Leroy Rodrigue, notice of the pendency of this action.  *See* Pl.'s Motion for Service by Publication & attached draft Notice of Action (apparently patterned on a Notice used by the U.S. Attorney's Office in Miami in another case, and erroneously stating that the instant action is for "statutory damages and civil penalties resulting from the submission of false claims to the Medicare program, in violation of the federal False Claims Act"); Audio Recording of Hearing at 04:54:46-04:54:56 (Government conceding errors in draft Notice of Action); *see also* Gaeth v. Deacon, 964 A.2d at 627 (explaining that "[t]he ultimate question when due process and the adequacy of notice of suit are at issue is whether the notice or attempted notice was reasonably calculated to give a defendant notice of the pendency of the action, not whether the technical requirements of a rule governing service of process were met") (*citing* Schroeder v. City of New York, 371 U.S. at 212-13).

The Government has proffered no information whatsoever on relevant matters such as the nature, readership, and circulation of the *Daily Business Review*, or its geographic distribution vis-a-vis the residence of Leroy Rodrigue.  *Compare*, *e.g.*, Family Tree Farms, 2009 WL 565568 * 3 (explaining that, in support of application for service by publication, plaintiff submitted declaration attesting, *inter alia*, that the two newspapers at issue were newspapers of general circulation, and that "publication of the summons in the newspapers was likely to give actual notice to Defendants because the Defendants' business addresses had been within the city and county in which the newspapers were published"); Zaritsky, 2008 WL 2705488 * 3 (denying motion for leave to serve by publication, and directing that any renewed motion detail, *inter alia*, "the newspaper(s) in which plaintiff plans to publish notice" and "why plaintiff reasonably believes that these particular newspaper(s) will provide effective notice"); Furin, 2008 WL 5068955 * 2  (granting motion to serve by publication where plaintiff's affidavit established, *inter alia*, that *The Washington Lawyer* and *Washington Post* are "widely circulated publications in the Washington, D.C. area" and would be appropriate vehicles for publication of notice).

This failure on the part of the Government would independently warrant denial of its Motion for Service by Publication.  *See*, *e.g.*, MATSCO, 597 F. Supp. 2d at 162 (denying motion for service by publication, ruling, *inter alia*, that "[p]ublication in a newspaper in Portland, Maine, where the defendant apparently no longer resides, cannot be said to be reasonably calculated to give him actual notice"); Thrivent Financial, 2008 WL 5412095 * 3 (setting aside default judgment based on plaintiff's service by publication, stating that plaintiff "should have published notification in the newspapers of . . . the counties that border [the county of defendant's last known address]," rather

Government's Motion for Service by Publication were not moot and even if the Government's papers in support of that motion were not legally insufficient on their face, the Government's Motion for Service by Publication nevertheless would have to be denied.

## C.  The Dismissal of This Action

USCIT Rule 4(l) directs that an action must be dismissed, without prejudice, where the plaintiff fails to effect service of process within the 120-day period, absent an extension of time. Accordingly, the denial of the Government's Motion for an Extension of Time (*see* section II.A, above) leads inexorably to the dismissal of this action without prejudice.  As other courts have noted, however, "without prejudice" does not necessarily mean "without consequence."

Where – as here – the statute of limitations has already run, such that any refiled action would be time-barred, the dismissal is (in effect) one with prejudice.  *See*, *e.g.*, Tuke v. United States, 76 F.3d at 156 (Easterbrook, J.)  (explaining that "[d]ismissal was without prejudice, but 'without prejudice' does not mean 'without consequence.'  If the case is dismissed and filed anew, the fresh suit must satisfy the statute of limitations. . . . A new suit would be untimely, so the dismissal is final . . . .") (internal quotations and citation omitted); Mendez v. Elliott, 45 F.3d 75, 78 (4th Cir. 1995) (observing that, although Rule 4's provision for dismissal "without prejudice" provision "permits a plaintiff to refile the complaint as if it had never been filed," the rule does not

than in newspapers in counties "not . . . the closest geographically" to the county of defendant's last known residence); Prudential Ins. Co., 2008 WL 1925293 * 4 (denying motion for service by publication, concluding, *inter alia*, that "service of the defendant [whose last known address was in Alabama] by publication in a New Jersey newspaper would not comport with due process"); Gaeth v. Deacon, 964 A.2d at 627 (holding that plaintiff's service by publication in *Lincoln County News* did not satisfy requirements of due process, where that weekly newspaper in Maine "would be highly unlikely to give [the defendant, a Massachusetts resident] actual notice of the lawsuit").

give a plaintiff "a right to refile without the consequence of time defenses, such as the statute of limitations").[119]

### III.  Conclusion

The U.S. Court of Appeals for the Seventh Circuit has noted that (like the rules of this Court) the Federal Rules of Civil Procedure, in effect, "give plaintiffs who sue under federal law the full period of limitations, plus 120 days, in which to achieve service."  Tuke v. United States, 76 F.3d at 157 (Easterbrook, J.) (citation omitted).  "Four months should be ample" – at least in the vast majority of cases.  *Id.*; *accord*, Cox v. Sandia Corp., 941 F.2d at 1126 (emphasizing that "Rule 4 provides ample time to effect service").

"The requirements of the rules," including those governing service of process, "apply equally to the government and to private litigants."  United States v. Britt, 170 F.R.D. 8, 9-10 (D. Md. 1996). For all the reasons set forth above, Plaintiff's motions to extend the time for service of process and for leave to serve by publication must be denied, and this action is hereby dismissed.  *See* USCIT R. 4(1).

So ordered.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided:   October 1, 2009
                New York, New York

_____

[119]*See also* United States v. World Commodities, 32 CIT at _____, 2008 WL 748677 * 4 (noting that "[a]lthough the court's dismissal is technically without prejudice to refiling, the expiration of the statute of limitations essentially ends the action as to [the defendant] because [plaintiff] Customs appears to be time-barred by the statute of limitations from refiling the claim").